# COLE *v.* CUNNINGHAM.

ERROR TO THE SUPREME JUDICIAL COURT OF THE STATE OF MASSACHUSETTS.

No. 74. Submitted November 6, 1889. — Decided January 20, 1890.

The Constitution of the United States, in proper cases, permits equity courts of one State to control persons within their jurisdiction from prosecuting suits in another State.

It is no violation of that provision of the Constitution of the United States which requires that full faith and credit shall be given in each State to the judicial proceedings of every other State, if a court in one State, (in which proceedings have been begun, under a general insolvent law of the State, to distribute the estate of an insolvent debtor among his creditors,) enjoins a creditor of the insolvent, (who is a citizen of the same State, and subject to the jurisdiction of the court,) from proceeding to judgment and execution in a suit against the insolvent in another State, begun by an attachment of his property there, after knowledge of his embarrassment and actual insolvency, which property the insolvent law of the State of the debtor's residence requires him to convey to his assignee in insolvency, for distribution with his other assets — there being nothing in the law or policy of the state in which the attachment is made, opposed to those of the State of the creditor and of the insolvent debtor.

THE case, as stated by the court, was as follows:

Daniel C. Bird, a citizen and inhabitant of Massachusetts, unable to meet his bills at maturity, suspended payment March 2, 1885, being at the time indebted to Butler, Hayden & Co., a copartnership composed of Charles S. Butler and N. F. T. Hayden, citizens and residents of Massachusetts, doing business in that State. On the night of the 4th or 5th of March, 1885, Butler, Hayden & Co. were informed by Bird that he had stopped payment, and that the firm of Aaron Claflin & Co., of New York, were indebted to him in a considerable sum for goods consigned by him to that firm to be sold on his account, and upon which Claflin & Co. had made advances but not to their full value. March 6th, Butler, Hayden & Co. executed an assignment of their claims against Bird to one Fayerweather, a resident of the State of New York, which assignment was made without consideration, and without previous communication with Fayerweather. March 11th and March 25th two

actions were commenced in New York in the name of Fayer-weather on the claims of Butler, Hayden & Co. against Bird as defendant, and the firm of Claflin & Co. were summoned as garnishees. March 13, 1885, a meeting of Bird's creditors was held, and a committee appointed to investigate his affairs and make a report. On the 20th of March a second meeting of Bird's creditors was held, at which a report was submitted by the committee. April 23, 1885, a proposal for composition under the statutes of Massachusetts in that behalf was filed by Bird, returnable May 4th. May 20th, the composition pro-posal having been withdrawn, regular proceedings in insolvency were continued therein, and June 1, 1885, Richard Cunningham and Henry Tolman, Jr., were duly appointed assignees in insolvency of the estate of said Bird by the court of insolvency for the county of Plymouth, Massachusetts. Hayden, of Butler, Hayden & Co., was present at one of these creditors' meetings. The suits in New York were brought in a court of competent jurisdiction, and the attachments and proceedings were regular and in conformity with the laws of New York; they are still pending, and no judgment has yet been obtained therein.

On the 19th of June the assignees in insolvency brought a bill in equity in the Supreme Judicial Court for the county of Suffolk, in the State of Massachusetts, against Butler and Hayden, copartners as Butler, Hayden & Co., praying that Butler, Hayden & Co., their agents, servants, attorneys, and solicitors, might be enjoined and restrained from proceeding to further continue the suits against Bird, begun by them in the name of Fayerweather, and from attempting to collect by suit or otherwise, in the name of Fayerweather or any other person, for their own benefit, from Claflin & Co., any money or other thing on account of the claim against Bird; that they be ordered to refrain from further prosecuting the suits in New York, in which Claflin & Co. were summoned as gar-nishees; or that they be ordered to transfer to the assignees all their right, title and interest by, or under, or on account of their claim pretended to have been assigned to Fayerweather, so that the assignees may have, as the effect of said order, full

right to receive all money due from Claflin & Co. without any hindrance or interference upon the part of Butler, Hayden & Co. therewith ; and a prayer for general relief.

Butler, Hayden & Co. answered the bill, denying any knowledge of Bird's insolvency, and claiming that the assignment to Fayerweather was made in good faith, and that the rights of Fayerweather, as a citizen of New York, under said assignment cannot be in any way affected by the insolvency of Bird ; and afterwards amended the answer, and claimed that even if the assignment to Fayerweather was invalid, the attachment proceedings in New York were regular, and gave a valid lien on the property attached ; and that, by the Constitution of the United States, the rights and interests gained by the attachments in New York cannot be taken away by the courts of Massachusetts without violating the provision that full faith and credit must be given in each State to the judicial proceedings of every other State.

The case was heard by a single judge upon certain agreed facts and additional evidence, and reserved by him for the consideration of the full court. It was stipulated "that either party may refer to the statutes of the United States, the statutes of the State of New York, and the several decisions of the State of New York, with the same effect as if the same were regularly introduced in evidence." The Supreme Judicial Court found, in addition to the matters hereinbefore stated, that it was fairly proven from the evidence " that the defendants, with full knowledge that Bird was insolvent, anticipating that there might be proceedings in insolvency in this State, and intending to secure to themselves, to the exclusion of other creditors, the avails of the debt owing to Bird by Claflin & Co., made the transfer of their claims to Fayerweather, and that the suits in New York now carried on in his name are subject to their control and conducted for their benefit. The attachments made in New York by process of garnishment are to be treated, so far as the defendants are concerned, as made by them." The court concluded its opinion, which is certified as a part of this record, and is reported in 142 Mass. 47, thus:

" In the case at bar it is true that the defendants had made their attachment through Fayerweather in New York before there had been an assignment in insolvency in this State actually executed, but this was done with full knowledge on their part that the debtor, Bird, was embarrassed and had suspended payment, and necessarily with intent to avoid the effect of the assignment, so far as the property attached was concerned. As residents of this State, they cannot be allowed to this extent to defeat the operation of the assignment, and thus to obtain a preference over other creditors resident here. They are within the limits of the jurisdiction of this court, and amenable to its process, and should be enjoined from prosecuting a suit the effect of which, if successful, will be to work a wrong and injury to other residents of the State."

The court thereupon entered a decree for the injunction prayed for, and Butler, Hayden & Co. sued out a writ of error from this court.

*Mr. Henry D. Hyde* and *Mr. M. F. Dickinson, Jr.*, (with whom was *Mr. Hollis R. Bailey* on the briefs,) for plaintiffs in error, cited : *Christmas* v. *Russell*, 5 Wall. 290, 300 ; *Green* v. *Van Buskirk*, 7 Wall. 139, 145 ; *Warner* v. *Jaffrey*, 96 N. Y. 248, 259 ; *Sartwell* v. *Field*, 68 N. Y. 341 ; *Dunlop* v. *Patterson Fire Ins. Co.*, 74 N. Y. 145 ; *Anthony* v. *Wood*, 29 Hun, 239 ; *McGinn* v. *Ross*, 11 Abb. Pr. (N. S.) 20 ; *Hibernian Nat. Bank* v. *Lacombe*, 84 N. Y. 367, 385 ; *Jenks* v. *Ludden*, 34 Minnesota, 486 ; *Kidder* v. *Tufts*, 48 N. H. 121, 126 ; *Paine* v. *Lester*, 44 Connecticut, 196, 204 ; *Rhawn* v. *Pearce*, 110 Illinois, 350 ; *Kelly* v. *Crapo*, 45 N. Y. 86 ; *Fuller* v. *Cadwell*, 6 Allen, 503 ; *Crapo* v. *Kelly*, 16 Wall. 610 ; *Hervey* v. *R. I. Locomotive Works*, 93 U. S. 664 ; *Taylor* v. *Carryl*, 20 How. 583 ; *Cooper* v. *Reynolds*, 10 Wall. 308 ; *Pennoyer* v. *Neff*, 95 U. S. 714 ; *Whipple* v. *Robbins*, 97 Mass. 107 ; *S. C.* 93 Am. Dec. 64 ; *American Bank* v. *Rollins*, 99 Mass. 313 ; *Garity* v. *Gigie*, 130 Mass. 184 ; *Wallace* v. *McConnell*, 13 Pet. 136, 151 ; *Nicoll* v. *Spowers*, 105 N. Y. 1 ; *Keller* v. *Paine*, 107 N. Y. 83, 90 ; *Bicknell* v. *Field*, 8 Paige, 440 ; *Harris* v. *Pullman*, 84 Illinois, 20 ; *Dehon* v. *Foster*, 4 Allen,

545; *Dehon* v. *Foster*, 7 Allen, 57; *Lawrence* v. *Batcheller*, 131 Mass. 504.

*Mr. Eugene M. Johnson*, for defendants in error, cited: *Dehon* v. *Foster*, 4 Allen, 545; *Keyser* v. *Rice*, 47 Maryland, 203; *Quidnick Co.* v. *Chaffee*, 13 R. I. 367; *Snook* v. *Snetzer*, 25 Ohio St. 516; *Vermont & Canada Railroad* v. *Vermont Central Railroad*, 46 Vermont, 792, 797; *Great Falls Manfg. Co.* v. *Worster*, 23 N. H. 462; *Bushby* v. *Munday*, 5 Madd. 297, 307; *Beckford* v. *Kemble*, 1 Sim. & Stu. 7; *Attwood* v. *Banks*, 2 Beavan, 192; *Hill* v. *Turner*, 1 Atk. 515; *Glascoit* v. *Lang*, 3 Myl. & Cr. 451; *Hope* v. *Carnegie*, L. R. 1 Ch. 320; *Ex parte Tait*, L. R. 13 Eq. 311; *In re Chapman*, L. R. 15 Eq. 75; *Sartwell* v. *Field*, 66 N. Y. 341; *Massie* v. *Watts*, 6 Cranch, 148; *Phelps* v. *McDonald*, 99 U. S. 298; *Corbett* v. *Nutt*, 10 Wall. 464; *Penn* v. *Lord Baltimore*, 1 Ves. Sen. 444; *Watkins* v. *Holman*, 16 Pet. 25.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

The question to be determined is, whether a decree of the Supreme Judicial Court of Massachusetts, restraining citizens of that commonwealth from the prosecution of attachment suits in New York, brought by them for the purpose of evading the laws of their domicil, should be reversed upon the ground that such judicial action in Massachusetts was in violation of Article 4, sections 1 and 2 of the Constitution of the United States, which read as follows:

"SEC. 1. Full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State. And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof.

"SEC. 2. The citizens of each State shall be entitled to all privileges and immunities of citizens in the several States."

The act of May 26, 1790, 1 Stat. 122, now embodied in § 905 of the Revised Statutes, after providing the mode of authenticating the acts, records and judicial proceedings of the States, declares:

"And the said records, and judicial proceedings authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States, as they have by law or usage in the courts of the State from whence the said records are or shall be taken."

This does not prevent an inquiry into the jurisdiction of the court, in which a judgment is rendered, to pronounce the judgment, nor into the right of the State to exercise authority over the parties or the subject matter, nor whether the judgment is founded in, and impeachable for, a manifest fraud. The Constitution did not mean to confer any new power on the States, but simply to regulate the effect of their acknowledged jurisdiction over persons and things within their territory. It did not make the judgments of the States domestic judgments to all intents and purposes, but only gave a general validity, faith and credit to them as evidence. No execution can be issued upon such judgments without a new suit in the tribunals of other States, and they enjoy, not the right of priority or privilege or lien which they have in the State where they are pronounced, but that only which the *lex fori* gives to them by its own laws, in their character of foreign judgments. *McElmoyle* v. *Cohen*, 13 Pet. 312, 328, 329; *D'Arcy* v. *Ketchum*, 11 How. 165; *Thompson* v. *Whitman*, 18 Wall. 457; *Pennoyer* v. *Neff*, 95 U. S. 714; *Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 265, 292; *Christmas* v. *Russell*, 5 Wall. 290; Story, Constitution, §§ 1303 *et seq.*; and Story, Conflict of Laws, § 609. And other judicial proceedings can rest on no higher ground.

These well-settled principles find pertinent illustration in the decisions of the highest tribunal of the State of New York, to one of which we refer, as the contention is that the decree under review was in some way an unconstitutional invasion of the jurisdiction of that State.

In *Dobson* v. *Pearce*, 12 N. Y. (2 Kernan) 156, the plaintiff in a judgment, recovered in New York, brought an action upon it in the Superior Court of Connecticut, whereupon the defendant in the judgment filed a bill against the plaintiff on the equity side of the same court, alleging that the judgment

was procured by fraud, and praying relief. The plaintiff in the judgment appeared in and litigated the equity suit, and the court adjudged that the allegations of fraud in obtaining the judgment were true, and enjoined him from prosecuting an action upon it. He assigned the judgment, and it was held in a suit in New York, brought thereon by the assignee, that a duly authenticated copy of the record of the decree in the Connecticut Court was conclusive evidence that the judgment was obtained by fraud.

The Court of Appeals held that while a judgment rendered by a court of competent jurisdiction could not be impeached collaterally for error or irregularity, yet it could be attacked upon the ground of want of jurisdiction, or of fraud or imposition; that the right of the plaintiff in the judgment was a personal right, and followed his person; that when the courts of Connecticut obtained jurisdiction of his person by the due service of process within the State, these courts had full power to pronounce upon the rights of the parties in respect to the judgment, and to decree concerning it; that the jurisdiction of a court of equity anywhere, to restrain suit upon a judgment at law, upon sufficient grounds, was one of the firmly established parts of the authority of courts of equity; and that it could not be held that a court of equity in one State had no jurisdiction to restrain such a suit upon a judgment of a court of law of another State. If the objection to so doing was founded upon an assumed violation of the comity existing between the several States of the United States, that did not reach to the jurisdiction of the court, a rule of comity being a self-imposed restraint upon an authority actually possessed; and as to the objection that the Constitution of the United States and the laws made in pursuance of it inhibited the action of the Connecticut courts, this could not prevail, since full faith and credit are given to the judgment of a state court, when in the courts of another State it receives the same faith and credit to which it was entitled in the State where it was pronounced. *Pearce* v. *Olney*, 20 Connecticut, 544; *Engel* v. *Scheuerman*, 40 Georgia, 206; *Cage* v. *Cassidy*, 23 How. 109.

The intention of section 2 of Article 4 was to confer on the

citizens of the several States a general citizenship, and to communicate all the privileges and immunities which the citizens of the same State would be entitled to under the like circumstances, and this includes the right to institute actions. The fact of the citizenship of Butler and Hayden did not affect their privilege to sue in New York and have the full use and benefit of the courts of that State in the assertion of their legal rights; but as that fact might affect the right of action as between them and the citizens of their own State, the courts of New York might have held that its existence put an end to the seizure of their debtor's property by Butler, Hayden & Co. in New York. If, however, those courts declined to take that view, it would not follow that the courts of Massachusetts violated any privilege or immunity of Massachusetts's own citizens in exercising their undoubted jurisdiction over them.

Discharges under state insolvent laws exemplify the principle. Where the effect of the insolvent law is to relieve the debtor from liability on his contracts, such discharge, if the creditor and debtor have a common domicil, or the creditor, though non-resident, has voluntarily become a party to the proceedings, avails the defendant in all courts and places.

It was decided in *Sturges* v. *Crowninshield*, 4 Wheat. 122, that state legislatures have authority to pass a bankrupt or insolvent law, provided there be no act of Congress in force establishing a uniform system of bankruptcy, conflicting with such laws; and provided the law itself be so framed that it does not impair the obligation of contracts. Eight years later, in *Ogden* v. *Saunders*, 12 Wheat. 213, the court held that the power of Congress to establish uniform laws on the subject of bankruptcies throughout the United States did not exclude the right of the States to legislate on the same subject, except when the power had actually been exercised by Congress, and the state laws conflicted with those of Congress; that a bankrupt or insolvent law of any State which discharged both the person of the debtor and his future acquisitions of property was not a law impairing the obligation of contracts, so far as respected debts contracted subsequent to the passage of the law; that a certificate of discharge under such law

could not be pleaded in bar of an action brought by a citizen of another State in the courts of the United States, or of any other State than that where the discharge was obtained. The insolvent law could have no extra-territorial operation, and the tribunal administering it would have no jurisdiction over citizens of other States. But this objection would not lie where such citizens had become parties to the proceedings. Hence in *Clay* v. *Smith*, 3 Pet. 411, it was held, where a citizen of Kentucky sued a citizen of Louisiana, and the defendant pleaded his discharge by the bankrupt law of Louisiana, that the plaintiff, who had received a dividend on his debt declared by the assignees of the defendant in Louisiana, had voluntarily made himself a party to those proceedings, abandoned his extra-territorial immunity from the bankrupt law of Louisiana, and was bound by that law to the same extent to which the citizens of Louisiana were bound. And it may be considered as settled that state insolvent laws are not only binding upon such persons as were citizens of the State at the time the debt was contracted, but also upon foreign creditors if they make themselves parties to proceedings under these insolvent laws, by accepting dividends, becoming petitioning creditors, or in some other way appearing and assenting to the jurisdiction. *Baldwin* v. *Hale*, 1 Wall. 223; *Gilman* v. *Lockwood*, 4 Wall. 409.

In New York an attachment is obtained on application to a judge of the Supreme Court, or a county judge, affidavit being made as to the validity of the claim and the grounds of the attachment, and a bond furnished with sufficient sureties. The judge in his discretion makes an order that a warrant of attachment be granted. The warrant is directed to the sheriff, and is subscribed by the judge, and requires the sheriff to attach and safely keep so much of the property as will satisfy the plaintiff's demand, with costs and expenses. This is served by the sheriff taking the property into his actual custody, or, in the case of a demand trusteed, by leaving a copy with the trustee or garnishee. The sheriff, under the direction of the court, must collect any debt or chose in action attached by him, and, if necessary, may bring an action in his own name, or in

that of the defendant, against the garnishee. Code of Civil Procedure, Title 3, 1 Bliss's New York Annotated Code, 545 *et seq.*

An attachment is in the nature of, but not, strictly speaking, a proceeding *in rem*, since that only is a proceeding *in rem* in which the process is to be served on the thing itself. If, in an attachment suit "the defendant appears, the cause becomes mainly a suit *in personam*, with the added incident, that the property attached remains liable, under the control of the court, to answer any demand which may be established against the defendant by the final judgment of the court. But, if there is no appearance of the defendant, and no service of process on him, the case becomes, in its essential nature, a proceeding *in rem*, the only effect of which is to subject the property attached to the payment of the demand which the court may find to be due to the plaintiff." *Cooper* v. *Reynolds*, 10 Wall. 308, 318. The lien is inchoate, and the property attached held to await the result of the suit. If a judgment for the plaintiff is obtained, the lien becomes perfected and the property is applied to satisfy the judgment. If plaintiff fails in his action, the lien falls with it. And he may so fail by reason of the discharge of the defendant in insolvency, when he is a citizen of the same State, or has made himself a party to the proceedings in insolvency, or by the action of other courts of the State where the suit is pending, or elsewhere, if jurisdiction *in personam* be obtained. So that, after all, the inquiry is, whether, in a proper case, the equity courts of one State can control persons within their jurisdiction from the prosecution of suits in another. If they can, in accordance with the principles of equity jurisprudence and practice, no reason is perceived for contending that the Constitution of the United States prescribes any different rule. And the determination of what is a proper case for equity interposition would seem to be reposed in the court whose authority is invoked, though some remarks in that regard may not improperly be made.

The jurisdiction of the English Court of Chancery to restrain persons within its territorial limits and under its jurisdiction from doing anything abroad, whether the thing forbidden be

a conveyance or other act, *in pais*, or the institution or the prosecution of an action in a foreign court, is well settled.

In *Penn* v. *Lord Baltimore*, 1 Ves. Sen. 444, Lord Hardwicke recognized the principle that equity, as it acts primarily *in personam* and not merely *in rem*, may, where a person against whom relief is sought is within the jurisdiction, make a decree, upon the ground of a contract, or any equity subsisting between the parties, respecting property situated out of the jurisdiction. 2 Lead. Cas. in Eq., (4th American edition,) 1806, and cases.

In *McIntosh* v. *Oglivie*, 4 T. R. 193, n.; *S. C.* 3 Swanston, 365, n.; *S. C.* 1 Dick. Ch. 119; Lord Hardwicke lays down the same doctrine as to restraining prosecution of suit. This case bears so close an analogy to that at bar that we give it in full, as follows, as reported in 4 T. R. :

" The plaintiff was the assignee of a bankrupt, the defendant a creditor, who before the bankruptcy went into Scotland and made arrestments on debts due to the bankrupt from persons there. Upon an affidavit of the defendant's having got this money into his hands, a *ne exeat* was granted; and a motion was now made on the behalf of the defendant to discharge it, upon a supposition that he had a right to the goods as creditor by his arrestments.

" The *Lord Chancellor* asked whether he had sentence before the bankruptcy; and, being answered in the negative, he said, ' Then it is like a foreign attachment, by which this court will not suffer a creditor to gain priority, if no sentence were pronounced before the bankruptcy. I cannot grant a prohibition to the Court of Sessions; but I will certainly make an order on the party here to restrain him from getting a priority, and evading the laws of bankruptcy here. If the gentleman were not going abroad, I would do nothing; but as he is, I will not discharge the writ without his giving security to abide the event of the cause.' "

*Penn* v. *Lord Baltimore* is cited with approval by Chief Justice Marshall in *Massie* v. *Watts*, 6 Cranch, 148, where a suit was instituted in the Circuit Court of Kentucky to compel the conveyance by the defendant of the legal title of land

in Ohio, on the ground that he had notice, when it was pur-
chased, of the prior equity of the complainant.   The defence
was that the land was beyond the jurisdiction of the court
and within the State of Ohio.   This defence was overruled by
the court below, and its decision affirmed by this court.
"This court is of opinion," said the Chief Justice, "that in
a case of fraud, of trust, or of contract, the jurisdiction of a
court of chancery is sustainable wherever the person be found,
although lands not within the jurisdiction of that court may
be affected by the decree."   p. 160.

And in *Pennoyer* v. *Neff*, 95 U. S. 714, 723, it is said in
the opinion of the court by Mr. Justice Field : "The State,
through its tribunals, may compel persons domiciled within its
limits to execute, in pursuance of their contracts respecting
property elsewhere situated, instruments in such form and
with such solemnities as to transfer the title, so far as such
formalities can be complied with ; and the exercise of this
jurisdiction in no manner interferes with the supreme control
over the property by the State within which it is situated.
*Penn* v. *Lord Baltimore*, 1 Ves. Sen. 444; *Massie* v. *Watts*,
6 Cranch, 148; *Watkins* v. *Holman*, 16 Pet. 25; *Corbett* v.
*Nutt*, 10 Wall. 464."

In *Lord Portarlington* v. *Soulby*, 3 Mylne & K. 104, 106, Lord
Chancellor Brougham reviews the history of the jurisdiction
to restrain parties from commencing or prosecuting actions in
foreign countries, and concludes : "Nothing can be more un-
founded than the doubts of the jurisdiction.   That is grounded,
like all other jurisdiction of the court, not upon any pretension
to the exercise of judicial and administrative rights abroad,
but on the circumstance of the person of the party, on whom
this order is made, being within the power of the court."   *Earl
of Oxford's Case*, 1 Ch. Rep. 1 ;  *S. C.* 2 Lead. Cas. in Eq. 1316.

Mr. Justice Story states the principle thus :

"But, although the courts of one country have no author-
ity to stay proceedings in the courts of another, they have an
undoubted authority to control all persons and things within
their own territorial limits.   When, therefore, both parties to
a suit in a foreign country are resident within the territorial

limits of another country, the courts of equity in the latter may act *in personam* upon those parties, and direct them, by injunction, to proceed no further in such suit. In such a case, these courts act upon acknowledged principles of public law in regard to jurisdiction. They do not pretend to direct or control the foreign court, but, without regard to the situation of the subject matter of the dispute, they consider the equities between the parties, and decree *in personam* according to those equities; and enforce obedience to their decrees by process *in personam.* . . . It is now held that whenever the parties are resident within a country, the courts of that country have full authority to act upon them personally with respect to the subject of suits in a foreign country, as the ends of justice may require; and, with that view, to order them to take, or to omit to take, any steps and proceedings in any other court of justice, whether in the same country, or in any foreign country." Story Eq. Jur. §§ 899, 900.

In *Phelps* v. *McDonald*, 99 U. S. 298, 308, Mr. Justice Swayne uses this language:

"Where the necessary parties are before a court of equity, it is immaterial that the *res* of the controversy, whether it be real or personal property, is beyond the territorial jurisdiction of the tribunal It has the power to compel the defendant to do all things necessary, according to the *lex loci rei sitæ*, which he could do voluntarily, to give full effect to the decree against him. Without regard to the situation of the subject matter, such courts consider the equities between the parties, and decree *in personam* according to those equities, and enforce obedience to their decrees by process *in personam.*"

Such is undoubtedly the result of the clear weight of authority, and the rule has been often applied by the courts of the domicil against the attempts of some of its citizens to defeat the operation of its laws to the wrong and injury of others.

Thus it was held by the Supreme Court of Ohio in *Snook* v. *Snetzer*, 25 Ohio St. 516, that where the statutes of that State exempted the earnings for personal service of a debtor, who was the head of a family and a citizen of the State, the

Ohio courts had authority to restrain a citizen of the county in which the equity action was commenced, from proceeding in another State to attach the earnings of such head of a family, with a view to evade the exemption laws of Ohio, and to prevent him from availing himself of the benefit of such law.

To the same effect is *Keyser* v. *Rice*, 47 Maryland, 203. The Court of Appeals of Maryland declared the power of the State to compel its own citizens to respect its laws, even beyond its own territorial limits, to be supported by the great preponderance of precedent and authority; and sustained an injunction to restrain the further prosecution in another State of an attachment, by which the defendant sought to recover wages due the complainant in Maryland and there exempt from attachment.

So in *Burlington and Missouri Railroad* v. *Thompson*, 31 Kansas, 180, though it was held that a foreign corporation doing business in Kansas might be garnisheed for a debt due to a non-resident employé, contracted outside of the State, and exempt from garnishment in the State where the defendant and garnishee resided, yet it was conceded by Judge Brewer, in delivering the opinion, "that in the courts of a State any citizen of that State may be enjoined from resorting to the courts of any other State for the purpose of evading the exemption laws of his own State;" and this was so decided in *Zimmerman* v. *Franke*, 34 Kansas, 650.

In *Wilson* v. *Joseph*, 107 Indiana, 490, the Supreme Court of Indiana ruled that an injunction would lie to restrain a resident of Indiana from prosecuting an attachment proceeding against another resident in the courts of another State, in violation of a statute which made it an offence to send a claim against a debtor out of the State for collection, in order to evade the exemption law. And see *Chaffee* v. *Quidnick Company*, 13 R. I. 442, 449; *Great Falls Manufacturing Co.* v. *Worster*, 23 N. H. (3 Foster) 462; *Pickett* v. *Ferguson*, 45 Arkansas, 177.

The rule is not otherwise in New York. It is true that in *Mead* v. *Merritt*, 2 Paige, 402, 404, the chancellor said: "I am not aware that any court of equity in the Union has deliberately decided that it will exercise the power by process of in-

junction, of restraining proceedings which have been previously commenced in the courts of another State." And the reason urged against the exercise of the power was that if the courts of one State should see fit to enjoin proceedings in another, the latter might retaliate in like manner in enjoining proceedings in the first, and thus give rise to an endless conflict of jurisdiction. But this reasoning has not commended itself to the judicial mind, for the injunction is not directed to the courts of the other State, but simply to the parties litigant, and although the power should be exercised with care, and with a just regard to the comity which ought to prevail among coördinate sovereignties, yet its existence cannot at this day be denied.

In *Vail* v. *Knapp*, 49 Barb. 299, 305, an injunction was continued against citizens of New York, plaintiffs in attachment suits in Vermont, upon the ground that they were proceeding in Vermont in evasion of the laws of New York; and the court points out that, though as a general rule the courts of New York decline to interfere by injunction to restrain its citizens from proceeding in an action which has been commenced in a sister State, citing *Mead* v. *Merritt*, 2 Paige, 402; *Burgess* v. *Smith*, 2 Barb. Ch. 276, and other cases, yet " there are exceptions to this rule, and when a case is presented, fairly constituting such exception, extreme delicacy should not deter the court from controlling the conduct of a party within its jurisdiction to prevent oppression or fraud. No rule of comity or policy forbids it."

The same result was announced in *Dinsmore* v. *Neresheimer*, 32 Hun, 204, where the Supreme Court of New York held that an express company could maintain an action in New York to restrain the defendant, a resident of the State of New York, from prosecuting actions against the company in the District of Columbia, brought to avoid a decision of the Court of Appeals of New York, differing from the rule upon the same subject in the District of Columbia.

In *Erie Railway Co.* v. *Ramsey*, 45 N. Y. 637, the Court of Appeals, speaking through Folger, J., treats the general question as not admitting of doubt.

At the time of these proceedings, as for many years before, the Commonwealth of Massachusetts had an elaborate system of insolvent laws, designed to secure the equal distribution of the property of its debtors among their creditors. Under these insolvent laws all preferences were avoided, and all attachments in favor of particular creditors dissolved. The transfer of the debtor's property to his assignees in insolvency extended to all his property and assets, wherever situated. This was expressly provided as to such as might be outside of the State. By one of the sections of the chapter of the Public Statutes of Massachusetts treating of this subject, the debtor was required to do all acts necessary to give the assignees power to "demand, recover and receive all the estate and effects so assigned, especially any part thereof which is without this State." Mass. Pub. Stat. 1882, c. 157, § 74. Whenever the debtor had made, to the satisfaction of the judge in insolvency, a full transfer and delivery of all his estate, and conformed to the directions and requirements of the law, he was entitled to be absolutely and wholly discharged from his debts, with certain exceptions; but it was provided that a discharge should not be granted to a debtor whose assets did not pay fifty per cent of the claims proved against his estate, unless upon the assent in writing of a majority in number and value of his creditors who had proved their claims. §§ 80, 86.

Nothing can be plainer, than that the act of Butler, Hayden & Co. in causing the property of the insolvent debtors to be attached in a foreign jurisdiction, tended directly to defeat the operation of the insolvent law in its most essential features, and it is not easy to understand why such acts could not be restrained, within the practice to which we have referred.

But for the attachment suits the assignees in insolvency could have collected the claim of Bird against Claflin & Co., but could not have intervened in those suits and asked of the courts of New York the enforcement of their title. The rule in that State is, that by the comity of nations, the statutory title of foreign assignees in bankruptcy is recognized and enforced when it can be done without injustice to the citizens of the State, and without prejudice to creditors pursuing their remedies

under the New York statutes, provided also that such title is not in conflict with the laws or public policy of the State, and that the foreign court had jurisdiction of the bankrupt. *In re Waite*, 99 N. Y. 433.

Under such a rule it is evident that the remedy of the assignees was in equity and in the courts of their domicil.

This is the conclusion reached in *Kidder* v. *Tufts*, 48 N. H. 121, 126, referred to by counsel for appellant. That was a case where citizens of Massachusetts commenced in New Hampshire an attachment against certain other citizens of the former State; proceedings in insolvency against the defendants were afterwards instituted in Massachusetts; and, subsequently to this, certain New Hampshire creditors attached the same property and then moved for a continuance to await the proceedings in insolvency, for the purpose of pleading the insolvent's discharge in bar of the first attachment. But the court denied the motion, holding that the Massachusetts creditors had availed themselves of their strict legal rights as established and allowed by the statute law of New Hampshire, and, for the purpose of an attachment, might properly be considered subjects of that state government; but the court added: "If the subsequent attaching creditors have a remedy, and can in any way prevent the plaintiffs from obtaining a preference, their appeal should be made, as creditors of the defendants, to the Massachusetts courts, which may exercise their jurisdiction over their own citizens if they have violated any of their laws by their experiment here." *Hibernia Nat. Bank* v. *Lacombe*, 84 N. Y. 367, 386.

So in the case of *Paine* v. *Lester*, 44 Connecticut, 196, where a citizen of Rhode Island attached in Connecticut a debt due from a citizen of Connecticut to a corporation of Pennsylvania, which had made an assignment for the benefit of creditors, the lien of the attachment was held valid against the claim of the trustee in the assignment, because the right of the trustee in insolvency in Connecticut rested only on the comity which the court there could exercise or refuse to exercise at its discretion, while the plaintiff had a legal right, under the laws of Connecticut, to prosecute his suit.

In *Rhawn* v. *Pearce,* 110 Illinois, 350, the Supreme Court of Illinois declined to recognize at law the insolvent laws of Pennsylvania, by giving effect to a statutory assignment in that State, even as against an attaching creditor of the same State with the debtor. But the same tribunal found no difficulty in holding, in *Sercomb* v. *Catlin,* 128 Illinois, 556, that the courts of Illinois, on the application of a receiver appointed by them, could enjoin a person within the jurisdiction of the court from interfering in respect to property belonging to an insolvent copartnership for which the receiver had been appointed, although that property was outside of the jurisdiction, and *Chaffee* v. *Quidnick Co.,* 13 R. I. 442; *Dehon* v. *Foster,* 4 Allen, 545; and *Vermont & Canada Railroad Co.* v. *Vermont Central Railroad Co.,* 46 Vermont, 792, were cited.

*Dehon* v. *Foster,* 4 Allen, 545, is the leading case upon the subject, argued by eminent counsel on both sides, and decided upon great consideration. The Supreme Judicial Court of Massachusetts, speaking through Bigelow, C. J., points out that the jurisdiction of a court, as a court of chancery, to restrain persons within its jurisdiction from prosecuting suits, upon a proper case made, either in the courts of Massachusetts or in other States or foreign countries, rests on the clear authority vested in courts of equity over persons within the limits of their jurisdiction and amenable to process, to stay acts contrary to equity and good conscience; and that, as the decree of the court in such cases is directed solely at the party, it is wholly immaterial that such party is prosecuting his action in the courts of another state or country.

The action was a bill in equity to enjoin a citizen of Massachusetts from availing himself of an attachment of personal property in Pennsylvania, as against a debtor put into insolvency under the laws of Massachusetts, and thus preventing the same from coming to the hands of the assignee. The court held that it was obvious that the controversy was simply as to the relative rights of citizens of Massachusetts to personal property belonging to insolvent debtors, domiciled in that state, and raised no question involving a conflict of rights

between citizens of Massachusetts and another State, nor as to the validity of a foreign law, or of liens acquired under it. On the contrary, the case rested on the ground that the defendants, if allowed to proceed with their action, would perfect a lien then only inchoate under their attachment, and might thereby establish a valid title to the property of the insolvent debtors under the laws of Pennsylvania.

" Looking then at our own laws," said the court, " to ascertain which of the two parties to this suit has a paramount right or superior equity to the debts due to the insolvents from persons residing out of the state, there would seem to be but little, if any, room open for doubt or controversy." The fundamental principle of the insolvent laws of the commonwealth, that all the property of the debtor should be taken and equally distributed among his creditors, was remarked on, and the provisions of the statute intended to secure that end recapitulated. The inevitable conclusion was announced that, as the act of the defendants in causing the property of the insolvent debtors to be attached in a foreign jurisdiction tended directly to defeat the operation of the law by preventing a portion of the property of the debtors from coming to their assignees to be equally distributed among their creditors, and giving a preference to certain of their debtors, so that they would obtain payment of their debt in full, it was, therefore, an attempt by those creditors, citizens of Massachusetts, to defeat the operation of their own laws, to the injury of other creditors of the insolvents. And the court proceeded : " This is manifestly contrary to equity. The defendants, being citizens of this state, are bound by its laws. They cannot be permitted to do any acts to evade or counteract their operation, the effect of which is to deprive other citizens of rights which those laws are intended to secure. Certain it is that they could not in any manner or by any process take from the assignees of an insolvent debtor property belonging to him within this state, and appropriate it to the payment of their debt in full. To prevent such appropriation, if the law furnished no adequate and complete remedy, this court would interfere by suitable process in equity. We are unable to see

any reason for withholding such interference, merely because our citizens seek to accomplish the same purpose by resorting to a foreign jurisdiction, and with the aid of the laws of another state or country. An act which is unlawful and contrary to equity gains no sanction or validity by the mere form or manner in which it is done. It is none the less a violation of our laws, because it is effected through the instrumentality of a process which is lawful in a foreign tribunal. By interposing to prevent it, we do not interfere with the jurisdiction of courts in other states, or control the operation of foreign laws. We only assert and enforce our own authority over persons within our jurisdiction, to prevent them from making use of means by which they seek to countervail and escape the operation of our own laws, in derogation of the rights and to the wrong and injury of our own citizens."

To the argument that the bill could not be maintained, because the statutes of Massachusetts regulating the assignment and distribution of insolvent estates could have no extra-territorial effect or operation, the court answered that while it was true that the statutes of Massachusetts *ex proprio vigore* had no effect or operation in other states, it was also true that, by the comity of states and nations, the laws of one country are allowed to a certain extent to control the rights of persons and property in other countries, though not allowed to have any effect to the injury of the citizens of such other country. From this principle it followed as a necessary consequence, that personal property of a Massachusetts insolvent debtor, situated in Pennsylvania, would vest in the Massachusetts insolvent's assignees, with power to take possession of and collect it either in their own names or in the name of the insolvent, if they were not held or attached by virtue of a process or lien in favor of a creditor, which would be valid under the laws of Pennsylvania. Hence, if the attachment in Pennsylvania were valid and binding, the Massachusetts creditors would obtain a right, superior to that conferred under the Massachusetts laws on the assignees in insolvency, by the act of such creditors, in defeat of the operation of the laws of their own state ; so that a proceeding in equity might properly be resorted to to compel

the defendants to desist from the prosecution of a suit which would have such an effect.

Nor did the court regard the fact as controlling to the contrary, that the attachment was made prior to the institution of the proceedings in insolvency, because the attachment tended to contravene the clear intent of the statutes, which aim to vest in the assignee all the property of the debtor which could have been assigned by him, or taken on execution against him, at the time of the commencement of the insolvent proceedings, "although the same is then attached on mesne process as the property of the debtor;" and because, aside from that, it appeared that the defendants, when they instituted process in Pennsylvania, and made their attachment, knew that the debtors were insolvent, and had reason to believe that proceedings in insolvency were about to be instituted against them, and caused the attachment to be made with an intent to obtain a preference over other creditors, and to avoid the operation of the insolvent laws of the commonwealth. Under such circumstances, priority gave no equity to the defendants. The purpose to interfere with and prevent the proper distribution of the insolvent's estate took away all claim to equitable consideration which might exist when priority was obtained in good faith. The decree accordingly went enjoining the defendants from prosecuting their attachments.

The objection was urged that the effect of the restraint might be to enable all non-resident creditors to appropriate property by attachment to the payment of their debts, and thereby to gain a preference over attaching creditors residing in Massachusetts as well as to prevent the property from passing to the assignees. This was of course a matter to be considered by the court in arriving at a conclusion as to granting the relief prayed. It may be remarked, however, that while as between citizens of the State of the forum, and the assignee appointed under the laws of another State, the claim of the former will be held superior to that of the latter by the courts of the former, yet this has not been so ruled in many of the States, as between an assignee appointed in another State and citizens of other States than that of his appointment, and of

the forum. Undoubtedly the fiction of law that the domicil draws to it the personal estate of the owner wherever it may happen to be, yields whenever it is necessary for the purposes of justice that the actual *situs* of the thing should be examined, and always yields when the laws and policy of the State where the property is located invalidate a transfer, even though valid by the law of the assignor's domicil, in which state it was made, subject to the qualifications, that property once vested in the assignee and in his possession will not be disturbed, and that in some jurisdictions, when the attaching creditor is domiciled in the same state with the assignor, he may be precluded from disputing the assignment in a foreign court.

Whether the law of the common domicil of two or more litigants determines their title to property in another territory, so that an attaching creditor, whose domicil is the same as that of the assignor, cannot set up against an assignment the law of a foreign country where the property is actually situated, has been much discussed. It is certain that the law of the common domicil cannot overcome such registry and other positive laws of the other country as are distinctively politic and coercive. Wharton on Confl. Laws, §§ 369, 371. If a State provides that no title shall pass to property within its borders, except on certain conditions, such provision cannot be overridden by the law of any other State, which parties domiciled there may be held to have adopted. It was in this view that Mr. Justice Miller, referring to a voluntary conveyance, in *Green* v. *Van Buskirk*, 5 Wall. 307, 311, 312, said:

"There is no little conflict of authority on the general question as to how far the transfer of personal property by assignment or sale, made in the country of the domicil of the owner, will be held to be valid in the courts of the country where the property is situated, where these are in different sovereignties. The learned author of the Commentaries on the Conflict of Laws has discussed the subject with his usual exhaustive research. And it may be conceded that, as a question of comity, the weight of his authority is in favor of the proposition that such transfers will generally be respected

by the courts of the country where the property is located, although the mode of transfer may be different from that prescribed by the local law.

"But, after all, this is a mere principle of comity between the courts, which must give way when the statutes of the country where property is situated, or the established policy of its laws, prescribe to its courts a different rule."

Great contrariety of state decision exists upon this general topic, and it may be fairly stated that, as between citizens of the state of the forum, and the assignee appointed under the laws of another state, the claim of the former will be held superior to that of the latter by the courts of the former; while, as between the assignee and citizens of his own state and the state of the debtor, the laws of such state will ordinarily be applied in the state of the litigation, unless forbidden by, or inconsistent with, the laws or policy of the latter. Again, although, in some of the states, the fact that the assignee claims under a decree of a court or by virtue of the law of the state of the domicil of the debtor and the attaching creditor, and not under a conveyance by the insolvent, is regarded as immaterial; yet, in most, the distinction between involuntary transfers of property, such as work by operation of law, as foreign bankrupt and insolvent laws, and a voluntary conveyance, is recognized. The reason for the distinction is that a voluntary transfer, if valid where made, ought generally to be valid everywhere, being the exercise of the personal right of the owner to dispose of his own, while an assignment by operation of law has no legal operation out of the state in which the law was passed. This is a reason which applies to citizens of the actual *situs* of the property when that is elsewhere than at the domicil of the insolvent, and the controversy has chiefly been as to whether property so situated can pass even by a voluntary conveyance.

In *Warner* v. *Jaffray*, 96 N. Y. 248, the debtor, residing in New York, made a general assignment, for the benefit of creditors, to the plaintiff. He owned personal property situated in Pennsylvania, which was attached by New York creditors, having no actual notice of the assignment, before the assign-

,ment had been recorded in Pennsylvania. A statute of that State provided that assignments of property situated there, made by a person not a resident therein, might be recorded in any county where the property was, and would take effect from its date, "provided that no *bona fide* purchaser, mortgagee, or creditor, having a lien thereon before the recording in the same county, and not having previous actual notice thereof, shall be affected or prejudiced." It was held that an injunction should not be granted against the New York creditors from prosecuting their attachment suits in Pennsylvania. The assignment, said the court, was a mere voluntary conveyance, and "did not operate upon the creditors of the assignor, nor place them under any obligations. It left them entirely free to act. They could utterly refuse to have anything to do with it, and retain their claims and enforce them in their own time, as best they could, against their debtor. The assignee became a trustee for such creditors of the assignor only as chose to accept him as such, and without their assent the assignment did not bring the creditors into any relation with the assignee, or with each other. The law did not take this insolvent's property for distribution among his creditors, but its distribution was his own act. Any one of his creditors could, notwithstanding the assignment, enforce his claim against any property of the assignor not conveyed by the assignment, without violating any rights or equities of the other creditors." The law of Pennsylvania was then referred to, and it was shown, as the fact was, that such an assignment was recognized in Pennsylvania, but that to give it effect before it had been recorded where the property was, would have been in contravention of the law of the State. Upon this ground the court distinguished *Ockerman* v. *Cross*, 54 N. Y. 29, where "it was held that a voluntary assignment by a debtor residing in Canada, valid by the laws of his domicil, and not invalidated by any law of this State, was valid here and operated to transfer the assignor's property situated here. That the decision would have been different if the assignment had been in contravention of our laws or policy, is fully recognized in the opinion of the court." And so also the court dis-

tinguished the case of *Bagby* v. *Atlantic, Mississippi & Ohio Railroad Co.,* 86 Penn. St. 291. There a receiver had been appointed in the State of Virginia of the property of the railroad company, and at the time of such appointment there was due to it, from a debtor in Pennsylvania, a certain sum of money which the receiver claimed. But after his appointment a creditor residing in Virginia went to the State of Pennsylvania and there commenced suit against the railroad company and attached the debt due it, and it was held that the receiver was entitled to the debt. And the Court of Appeals said: ",The transfer of the title to the receiver was not in contravention of any law of Pennsylvania, and hence it was held that as against a citizen of Virginia, bound by its laws, the appointment of a receiver, binding upon him there, would, by comity, be held to be binding upon him in Pennsylvania."

In the case in hand, the Supreme Judicial Court of Massachusetts thought it proper to grant the injunction, since it was a case of the taking by the law of the insolvent's property for distribution among his creditors, who, so far as resident in the State of Massachusetts, were brought into relations with the assignee and with each other, which precluded them from enforcing their claim against the property of the assignor conveyed by the assignment, and rendered the effort to do so a violation of the rights and equities of the other creditors, and an absolute infraction of the law of their own domicil. Nor was there any law or policy of the State of New York contravened by the insolvent proceedings in question, or in itself inimical to the title of the assignees.

In *Lawrence* v. *Batcheller*, 131 Mass. 504, the defendant, Batcheller, a citizen of Massachusetts, had brought suits by attachment in other States against one Paige, also a citizen of Massachusetts, indebted to defendant, and in embarrassed circumstances, and garnisheed and ultimately collected various amounts due to Paige. Paige subsequently went into insolvency, and his assignees sued Batcheller at law to recover the money. The Supreme Judicial Court of Massachusetts held that the assignees could not recover because, as the attachments were made prior to the time when the assignment in insolvency took

effect, and, having been made in other States, were not dissolved by the proceedings in insolvency, and were valid by the laws of the States where they were instituted, they prevailed over the insolvency assignment, the statutes of Massachusetts not making a title so acquired void or voidable at the election of the assignees in insolvency. And the court, holding that courts of law will not always afford a remedy in damages for all wrongs which courts of equity might prevent, said : "Courts of equity recognize and enforce rights which courts of law do not recognize at all; and it is often on this ground that defendants in equity are enjoined from prosecuting actions at law." The distinction between the action as brought and *Dehon* v. *Foster* was treated as obvious.

What has been said is in harmony with the rule announced in *Green* v. *Van Buskirk*, 5 Wall. 307; *S. C.* 7 Wall. 139. In that case, Bates, who lived in New York, executed and delivered to Van Buskirk, who lived in the same State, a chattel mortgage on certain iron safes which were then in the city of Chicago. Two days after this, Green, who was also a citizen of New York, being ignorant of the existence of the mortgage, sued out a writ of attachment in the courts of Illinois, levied on the safes, and subsequently had them sold in satisfaction of the judgment obtained in the attachment suit. There was no appearance or contest in this attachment suit, and Van Buskirk was not a party to it, although he could have made himself such party and contested the right of Green to levy on the safes, being expressly authorized by the laws of Illinois so to do. It was conceded that by the law of Illinois mortgages of personal property, until acknowledged and recorded, were void as against third persons. Subsequently Van Buskirk sued Green in New York for the value of the safes mortgaged to him by Bates, of which Green had thus received the proceeds. The courts of New York gave judgment in favor of Van Buskirk, holding that the law of New York was to govern and not the law of Illinois, although the property was situated in the latter State, and that the title passed to Van Buskirk by the execution of the mortgage. The cause was then brought to this court and first considered upon a motion to

dismiss for want of jurisdiction. Mr. Justice Miller delivered the opinion overruling that motion. The cause then came on to be heard upon the merits, and the judgment of the Court of Appeals of New York was reversed. This court held that as, by the laws of Illinois, an attachment on personal property would take precedence of an unrecorded mortgage, executed in another State where recording was not necessary, the judgment in attachment would be binding though the owner of the chattels, the attaching creditor and the mortgage creditor might all be residents of such other State; and Mr. Justice Davis, speaking for the court, said:

"It should be borne in mind, in the discussion of this case, that the record in the attachment suit was not used as the foundation of an action, but for purposes of defence. Of course, Green could not sue Bates on it, because the court had no jurisdiction of his person; nor could it operate on any other property belonging to Bates than that which was attached. But as, by the law of Illinois, Bates was the owner of the iron safes when the writ of attachment was levied, and as Green could and did lawfully attach them to satisfy his debt in a court which had jurisdiction to render the judgment, and as the safes were lawfully sold to satisfy that judgment, it follows that when thus sold the right of property in them was changed, and the title to them became vested in the purchasers at the sale. And as the effect of the levy, judgment and sale is to protect Green if sued in the courts of Illinois, and these proceedings are produced for his own justification, it ought to require no argument to show that when sued in the court of another State for the same transaction, and he justifies in the same manner, that he is also protected. Any other rule would destroy all safety in derivative titles, and deny to a State the power to regulate the transfer of personal property within its limits, and to subject such property to legal proceedings." 7 Wall. 148.

It will be perceived that it was manifestly inadmissible to hold that after Van Buskirk had permitted Green to go to judgment in a proceeding *in rem*, which appropriated the property as belonging to Bates, he could then get judgment

against Green for the conversion of what had so been adjudged to him, an adjudication which Van Buskirk had voluntarily declined to litigate in the proper forum, and had not sought in his own State to prevent. It was a contest between two individuals claiming the same property, and that property capable of an actual *situs*, and actually situated in Illinois. The attachment was not only levied in accordance with the laws of Illinois, but the laws of that State affirmatively invalidated the instrument under which Van Buskirk claimed. Clearly, then, the law of the domicil of Van Buskirk, Green and Bates could not overcome such registry and other positive laws of Illinois as were distinctively coercive. *Hervey v. Rhode Island Locomotive Works*, 93 U. S. 664; *Walworth v. Harris*, 129 U. S. 355.

In the case at bar, the attachment suits have not gone to judgment, and the assignees in insolvency have proceeded with due diligence as against these creditors, citizens of Massachusetts, who are seeking to evade the laws of their own State; nor is there anything in the law or policy of New York opposed to the law or policy of Massachusetts in the premises.

We find no infringement of the Constitution in the rendition of the decree, and it is accordingly

*Affirmed.*

MR. JUSTICE MILLER, with whom concurred MR. JUSTICE FIELD and MR. JUSTICE HARLAN, dissenting.

I dissent from the judgment and opinion of the court in this case. I am of opinion that the proceedings in the state court of New York, whether they be considered as the *bona fide* action of Fayerweather for his own benefit, or as merely representing the interests of Butler, Hayden & Co., were efficient in establishing a lien on the indebtedness of Aaron Claflin & Co., of New York, which by the laws of that State was superior to any right then held, or which could be acquired afterwards by the assignees in insolvency of Daniel C. Bird.

Indeed, it is not questioned in the very learned opinion of the court in this case that if Butler, Hayden & Co. had been permitted to go on with their proceeding in New York, they

would have secured an order in the court in which the proceedings were pending, that the garnishees, Aaron Claflin & Co., should pay the amount of their indebtedness to the plaintiff in that action. But the whole argument of the court is that, because Butler, Hayden & Co. were citizens of Massachusetts, they were under some superior obligation to the law of Massachusetts, and to be governed by the rights that law conferred, which prevented them from availing themselves of the law of New York that gave them this superior right.

I do not deny the general principle that a party found within the jurisdiction of a court and subject to its process may be restrained and enjoined from doing certain things in some other jurisdiction because the thing which he might attempt to do is opposed to the principles of equity or to the law of the place where he is found. And such might be the law in this case, but for the provision of the Constitution of the United States and the act of Congress, both of which are recited in the opinion of the court, which require that the "records and judicial proceedings of a State authenticated as aforesaid shall have such faith and credit given to them in every court in the United States as they would have by law or usage in the courts of the State from whence such records are or shall be taken." The record introduced from the court of New York in this case had the effect in that State to give Butler, Hayden & Co. a lien on the indebtedness of Aaron Claflin & Co.; to their creditor, Bird, which in that court would have ripened into a judgment and been enforced. That was the faith and credit which the laws of New York gave to that proceeding. It initiated a right. It established a lien, and there was no power in the courts of Massachusetts to interrupt the course of these proceedings to the final result. That is to say, there was no power to do this directly. Had it the right to do it by seizing the persons of Butler, Hayden & Co. in Massachusetts, and compelling them there to forego the advantage which they had secured in the state courts of New York? When, therefore, Butler, Hayden & Co. were sued in equity in the courts of Massachusetts, and there was produced the record of these proceedings in the court of New York, the

question was presented to the courts of Massachusetts what effect they would give to those proceedings. Now they did not give the effect which the laws of New York gave to them. Neither the law nor the usage in the courts of New York admitted of such proceeding as that taken in the courts of Massachusetts.

If there was any error in proceedings in the court of New York, that error was subject to correction in due course of law in courts of justice of the State of New York, and Butler, Hayden & Co. had a right to insist on the validity of their proceedings being tested by the courts, and governed by the laws of the State of New York, and not by those of Massachusetts.

It is no answer to this to say that Butler, Hayden & Co. were citizens of Massachusetts and were found within its jurisdiction. The higher law of the Constitution of the United States places this restraint upon the courts of Massachusetts in dealing even with her own citizens, and if her citizens have obtained rights in the courts of New York which have become a part of the records and judicial proceedings of those courts, no matter how the law under which those rights are established may be opposed to the law of the State of Massachusetts, they are to be respected by the courts of Massachusetts because they are effectual over the parties and subject matter in New York, and because the Constitution of the United States and the act of Congress of May 26, 1790, assert the principle that the courts of Massachusetts must give full credit, by which is meant the same effect to the proceedings in New York which that State gives to them. The constitutional provision which makes this declaration is part of Article IV, and it is in immediate connection with its second section, which declares that "the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States." The meaning of this is to prevent conflicts between courts of the different States, over the same matters, by establishing the rule that whatever is done or decided in one State shall be respected in every other State when properly proved before it. It is one feature of the general idea which is found all through the Constitution.

These are the principles established after a most vigorous contest by the case of *Green* v. *Van Buskirk*, twice before this court, and reported in 5 Wall. 307, and 7 Wall. 139. In that case both the contesting parties lived in the State of New York and were citizens of that State. Each asserted a paramount title to certain safes which were in the city of Chicago. Green, although a citizen of New York with Van Buskirk, levied in the State of Illinois an attachment on these safes, on which Van Buskirk had a chattel mortgage executed in the State of New York but not recorded in Illinois. Green proceeded with his attachment and bought the safes under it, which he converted to his own use in Illinois. Afterwards he was sued by Van Buskirk in the State of New York for this conversion, and he set up and relied on the proceedings in the attachment suit in Illinois as a defence. The Supreme Court of New York held that as between its own citizens, its law upon the subject of chattel mortgages, which was the claim Van Buskirk had on the safes, should prevail, while Green insisted that the law of Illinois, where the proceedings in the attachment took place, and where the safes were, should govern. In the case as it first presented itself in this court a motion to dismiss for want of jurisdiction was made, which the court overruled on the ground that the case was to be governed by the law of Illinois under the Constitution of the United States and the act of Congress already referred to.

The case afterwards came on in 7 Wall. upon the further question whether the laws of Illinois were such as to give Green a right to that proceeding, and the court held that they were; that the attachment, judgment and sale in Illinois were valid, and that the state courts of New York were bound to give them effect in the proceeding of *Van Buskirk* v. *Green*.

The only difference between that case and the one now under consideration is, that at the time the court in Massachusetts intervened and undertook to prevent Butler, Hayden & Co. from pursuing their case in the courts of New York, there had been no judgment in favor of that company. But I am at a loss to see why the right established by Butler, Hayden & Co. in the courts of New York is not as much to be respected and

the same effect given to it according to its nature, as if the judicial proceeding had ripened into a judgment.  It is very clear that, but for the injunction against Butler, Hayden & Co. they would have got such a judgment and would have obtained their money ; and if they had been sued in Massachusetts for violating the laws of Massachusetts on that subject, it is equally clear, according to _Green_ v. _Van Buskirk_, that the proceedings in the New York court would have been a good defence.  I think, therefore, that the judgment of the court and the principles of the opinion are erroneous, and are opposed to the former decisions of this court.

MR. JUSTICE BREWER, not having been a member of the court when this case was considered, took no part in its decision.