# KEANE v. CHAMBERLAIN.

INJUNCTIONS; CONFLICT OF LAWS; ASSIGNMENTS FOR BENEFIT OF
CREDITORS; ESTOPPEL.

1. Whether Sec. 720, R. S. U. S., providing that the writ of injunction
shall not be granted in any court of the United States to stay
proceedings in any court of any State, is locally applicable, so
as to prevent the courts of this District from enjoining a party
resident here from proceeding in a court of Maryland, dis-
cussed but not decided.

2. The title and disposition of real property are exclusively subject
to the laws of the State wherein it lies, which can alone pre-
scribe the mode whereby the title may be passed; and this rule
applies as well to the transmission of title by an assignment
for the benefit of creditors as by deed.

3. Under the laws of Maryland the general words of an assignment
for the benefit of creditors are restricted by the particular
description of a schedule which is made part of it; and where
such an assignment, executed in this District, purports in the
schedule to convey a life estate only of the assignor in lands in
Maryland, the assignee will take only such life estate, although
the assignment purports to convey all of the assignor's prop-
erty, and his life estate is coupled with a power of alienation
by deed or will.

4. Such an assignment is subject, so far as concerns the title to the
Maryland land, to the provisions of a statute in that State, that
no title shall pass to an assignee until his bond shall have been
filed and approved, and to the construction placed upon that
statute by the courts of that State to the effect that a lien
acquired by attaching creditors after the date of the assign-
ment is not affected by the subsequent execution and approval
of the assignee's bond.

5. And where, under such circumstances, an attaching creditor has
reduced his claim to judgment in Maryland, the courts of this
District will not at the suit of other creditors enjoin him from
proceeding to execute his judgment against the land in that
State.

6. Nor if, in such a case, the land in Maryland has been sold under a
judgment of condemnation obtained by such attaching creditor,
will the courts of this District compel him to bring into court

the proceeds of such judgment for distribution among all the assignor's creditors, upon the ground that by an acceptance by him of the assignment he is estopped to deny its sufficiency as a conveyance of the land?

No. 860.  Submitted December 9, 1898.  Decided January 3, 1899.

HEARING on an appeal by the defendant (specially allowed) from a decree of the Supreme Court of the District of Columbia, overruling a demurrer to a bill for an injunction, etc. *Reversed.*

The COURT in its opinion stated the case as follows:

The appeal in this case is from an order overruling a demurrer to the appellee's bill, and was allowed November 8, 1898, upon the special grounds set forth in the petition therefor.*

The bill alleges that all the parties, complainants and defendants, are citizens of the United States and residents of the District of Columbia.

The substantial facts alleged in the bill are these:

On April 24, 1896, defendant, John B. Scott, then engaged in business in said District, made an assignment for the

---

*The grounds urged in the petition for the allowance of the appeal were as follows:

1. The decision of the questions raised by the demurrers will virtually determine the right of the parties to the cause.

2. The granting of the injunction *pendente lite* has produced a conflict of jurisdiction between the Supreme Court of the District of Columbia and the courts of Maryland which, for the sake of the orderly administration of justice, should be speedily determined.

3. That should the accounts be taken and the audit had which the grant of such injunction makes necessary, great delay will be experienced and great expense incurred; all of which will be avoided should the said demurrers be decided in favor of the petitioners.

4. That although it may be the said order of injunction does not affect the possession of property, yet it does affect the right of the petitioners to the benefit of their said several judgments and their right of possession of the said fund now in the hands of the said sheriff, who, under the orders of the said Maryland court, holds the same for them, thus coming within the true intent of the statute giving parties absolute right of appeal.

benefit of his creditors to the defendant, Horatio Browning, assignee. Said Browning was then a partner with one Middleton, who is also a defendant, under the name of Browning & Middleton.

The said deed of assignment conveyed to said Browning, assignee, "all and singular the real estate, goods, chattels, merchandise, effects, stocks, promissory notes, debts, claims, demands, and property" of the said Scott, excepting legal exemptions, and declared the same to be fully described in Schedule A thereto annexed.

Schedule A gives a list of certain property not necessary to be mentioned here, and contains the following recital: "Estate for life of said party of the first part in twenty-five acres of land in Montgomery County, State of Maryland, particularly described in deed recorded in Liber J. A., No. 11, folio 241 *et seq.*, of the Land Records of said county."

The deed referred to was made by John D. Coughlan to said Scott. Scott was the owner in fee simple of said land, and on October 17, 1888, conveyed it to Coughlan. Coughlan on the next day re-conveyed the same to Scott, his heirs and assigns, to the use of Scott, his heirs and assigns, upon the following trusts:

"In trust for the said John B. Scott during his life to re-. tain possession of said parcel of land and premises, without impeachment for waste, and receive the rents, issues and profits thereof for his own use and benefit, and from and after his death to hold said parcel of land and premises unless the same shall be disposed of as hereinafter authorized for the use and benefit of Mary Elizabeth Scott and Margaret Adelia Scott, daughters of said John B. Scott, their heirs and assigns forever, as tenants in common; and upon this further trust, that said John B. Scott shall have full power and authority to lease or sell said parcel of land or any part thereof from time to time and convey the same in fee simple absolute or by way of mortgage, deed of trust or otherwise, and upon such terms and for such conditions as

said John B. Scott may deem fit, and without obligation on the part of the purchaser to see to the application of the purchase money or the person lending the money to see to the application thereof, and to devise and to dispose of said parcel of land and premises by last will and testament executed according to law."

The deed of assignment was regularly executed by Scott and Browning, as assignee, and each and all of the defendants had actual and constructive notice of the same, and elected to accept its provisions by attending creditors' meetings called by the assignee.    All of the defendants, as well as the complainants, were creditors of said Scott.    The instrument was recorded by the assignee in the District of Columbia May 10, 1896, and in Montgomery County, Maryland, on June 3, 1896.

Before the record in Montgomery County, one of the defendants, Thomas T. Keane, filed actions of debt in the circuit court of said county against Scott, and sued out attachments that were levied upon the said lands.

After the date of the record the other defendants, including Browning and Middleton, brought their separate actions of debt in the Circuit Court of Montgomery County, Maryland, against Scott, and caused attachments to be levied on said land also.

Keane obtained judgments of condemnation on November 11, 1896, which were followed in March, 1897, by similar judgments in favor of the other attaching creditors aforesaid.

The assignee, Browning, filed another suit in his own name in December, 1897, with an attachment in which judgment of condemnation was entered January 17, 1898.

On December 22, 1896, Keane, upon his judgments aforesaid, filed a bill in equity in the Circuit Court of Montgomery County, Maryland, against said Scott, and his daughters, Mary Elizabeth and Margaret Adelia Scott, and said John D. Coughlan, to set aside said conveyances on the

ground that they had been made without consideration and for the purpose of hindering, delaying and defrauding creditors, and so forth.

A decree was passed in said suit July 16, 1897, annulling the said deeds in so far as they might affect the rights and claims of said Keane as creditor, and this decree was affirmed by the Court of Appeals of Maryland on June 28, 1898.

On July 23, 1898, Keane filed the mandate of the Court of Appeals, and procured a writ of *fieri facias* to issue to the sheriff of said county upon his judgment of condemnation. The sheriff has advertised the land, which is worth about $15,000, for sale on August 27, 1898, which, if proceeded with, will cause the sacrifice thereof for an inadequate price. It is also alleged:

"That it was the intention of said Scott, well known to said Browning, to convey, as he states in his deed of assignment, all his property except legal exceptions, and the use of the term 'estate for life' in reference to the Maryland land was an attempt to describe all the interest which he had therein, and had he known that the courts would hold that the deed under which he held was constructively fraudulent in its limitations and vested in him the fee simple he would have so listed in his schedule. The proper construction that should be given the granting clause and schedule together is that all title which said Scott had in said land passed by the deed of assignment, and in any event, as plaintiffs are advised, believe, and therefore allege, the grantor being a resident of the District of Columbia and the deed of assignment having been made in said District, it vested in the assignee all property of said Scott, wherever situated, irrespective of the schedule, at least so far as concerns citizens or residents of said District; that it was the duty of said assignee to at once take possession of said Maryland farm, as well as all other property, which he failed and neglected to do, but instead thereof attempted and undertook, as hereinafter stated, to ignore said deed of assignment

so far as related to said farm and to convert same, in part at least, to his own use."

Other allegations of acts of Browning inconsistent with his duty and obligation as trustee, are also made, and the prayers for relief, omitting the first as merely formal, are:

"Two. That the defendant Browning be required with his answer to exhibit an account of the assets that came to his hands and of the manner in which he has disposed of same.

"Three. That the defendant Scott, in his answer, disclose the location and character of any property not mentioned in the schedule, but owned by him at date of the assignment.

"Four. That said Browning be removed as assignee and a trustee appointed in his stead to execute said trust, and said Browning required to turn over to him any balance or assets in his hands.

"Five. That said Scott be required, if need be, to execute to said new trustee a deed more specifically conveying the fee simple title to said Maryland land.

"Six. That the attaching creditors be restrained, pending this action, from in any manner proceeding to enforce their said attachments on judgments of condemnation against said Maryland land, and from doing any act or thing to hinder, delay, or interfere with the control or management of the estate abroad for the equal benefit of all said Scott's creditors, and from in any way seeking to secure to themselves any greater benefit or interest out of said estate and effects than shall represent their *"pro rata"* share under said assignment, and that on final hearing such injunction be made perpetual.

"Seven. Or, if this can not be done, that the attaching creditors be directed to bring into court any moneys realized from said land, and that the same be treated as assets passing by said deed of assignment, and distributed among the creditors as therein directed.

"Eight. For a reference then to the auditor for proof of

claims and for the taking and stating an account with the assignee, Browning.

"Nine. And for such other and further relief as to the court may seem right and proper."

A restraining order was granted August 25, 1898, returnable on August 29.

This was modified on August 26, 1898 "so that it shall not interfere with the right of the defendant, Thomas T. Keane, to allow or cause the sale advertised under the writ of *fieri facias* to proceed."

Defendants joined in a demurrer to the bill, which was overruled on November 1, 1898, and the temporary injunction, granted and modified as aforesaid, was continued in force until the final hearing.

It was stated on the argument, and accepted as a fact in the case, that the sale was made under execution as advertised, and that the land brought the sum of $8,500.

It appears, by inference from the omission of an allegation in the bill relating thereto, and by practical concession on the argument, that no bond was filed by the assignee in the State of Maryland as required by statute in the case of assignments for the benefit of creditors. Code of Maryland, Art. 16, Sec. 205.

*Mr. A. A. Birney, Messrs. Edwards & Barnard,* and *Mr. Arthur Peter* for the appellants:

1. The deed under which appellees claim only attempts to convey a life estate. The appellees are simple contract creditors without judgments. Any rights which they may have to the property in question must be derived from the deed of assignment. This deed, properly construed, purports to convey nothing but a life estate in the Maryland property. The general terms in the body of the assignment are expressly restricted by reference for a more full and particular description to the schedule. The schedule expressly grants a life estate, and in such cases it is held that

the schedule governs. *Mims* v. *Armstrong*, 31 Md. 96. Scott had only a life estate in the property, the powers constituted no estate nor could the creditors compel him to exercise the same for their benefit. *Scott* v. *Keane*, Court of Appeals of Md., not yet reported, construing deed in question. Thus there is no occasion to consider cases of misdescription, for Scott described accurately in the deed of assignment the estate he had, viz., a life estate. In no part of the deed of assignment does he show an intention to exercise the powers which must appear before his daughter's fee simple could pass to the assignor. Even in a will this is so. *Mory* v. *Michael*, 18 Md. 241. As to powers executed by wills, this has been changed in Maryland by statute, but the common law as to deeds remains unaffected. Code of Md., Art. 93, Sec. 316.

A power can be validly exercised by deed in only three ways: " First, by a direct reference to the power; secondly, by a disposition of the subject of the power when the person making the disposition possesses a mere naked power of appointment, coupled with no interest; and, thirdly, when the instrument relied on as an execution of the power would be inoperative unless aided by the power." *Farlow* v. *Farlow*, 83 Md. 122. That the deed of assignment in question does not amount to an exercise of the power is settled by *Ridgely* v. *Cross*, 83 Md. 161. By the terms of the deed creating the power Scott could sell, mortgage or devise the property; but a conveyance by deed of assignment is not a mortgage nor a will, and does not amount to sale; therefore had he purported to exercise the power the property would not have passed thereunder, since he had no right to exercise the power for this purpose.

2. Nothing but a life estate could have passed under the deed of assignment. As we have seen, the Maryland Court held that Scott only had a life estate, and the fee could be obtained by the creditors on account of the fraudulent character of the Coughlan deeds. It follows that Scott could

not complain of his own fraud, have the deeds set aside, and thus obtain the fee simple; so his assignee, who is not a *bona fide* purchaser for value, and has no greater rights than his assignor, could not have done so. *Luchmeyer* v. *Seltz*, 61 Md. 324.

The appellees also rely upon the Act of Congress (27 Stat. 474), relating to assignments in the District of Columbia, wherein is found the following language: "But such inven-tory shall not be conclusive as to the amount of the debtor's estate, but such assignment shall vest in the assignee or as-signees the title to any other property belonging to the debtor at the time of making the assignment, and comprehended within the general terms of the same." But all the property or estate Scott had in the land in question was a life estate; the fee simple did not belong to him. The act refers to property belonging to the assignor; not to powers which the creditors could not compel the execution of. Nor is the in-tention to exercise the power over the fee simple in the Maryland property found even in the general terms of the assignment, and an express intent to the contrary is found in the schedule. Again, the statute does not operate upon property previously conveyed in fraud of one's creditors, since that does not belong to the assignor.

It is the law of Maryland and not of the District of Colum-bia that governs in the effect which the deed of assignment has upon real property in Maryland, and no extra-terri-torial force can be given to the Act of Congress. *Osborn* v. *Adams*, 18 Pick. 247; *Thompkins* v. *Adams*, 41 Kans. 46; *Gardner* v. *Bank*, 95 Ill. 304; *Loving* v. *Pairo*, 10 Iowa, 286.

3. By an express statute of Maryland no title has ever passed under the deed of assignment, and for this court to fail to give effect to that statute would be unconstitutional. Keane's attachment was levied before the deed was recorded in Maryland, and all the attachments were levied before a bond was filed by the assignee. Until this bond is filed no title to the property passes to the assignee, *a fortiori* to those

who claim under him. Code of Md., Art. 16, Sec. 205. This act is imperative and applies in favor of non-residents to foreign assignments, where the property is real estate situated in that State. *White* v. *Bank*, 80 Md. 1. A subsequent filing of bond is insufficient. *Stiefel* v. *Cohen*, 73, Md. 410. The act also requires sale of lands to be reported to the Circuit Court in Maryland. *Moore* v. *Title Co.*, 82 Md. 292. Thus no title to the property in question has ever passed by the instrument under which the appellee's claim, and this positive act of the Maryland legislature relating to real property in that State must be given effect by the courts of the District of Columbia. The latter can not dispose of the property in conflict therewith, for such conduct would be in violation of the Constitutional provision requiring full faith and credit to be given the public acts of another State. This would be so even if the property were personal. *Green* v. *Van Buskirk*, 5 Wall. 307; *Cole* v. *Cunningham*, 133 U. S. 107.

4. The appellants having obtained judgments in Maryland it would be unconstitutional for this court to interfere. *Green* v. *Van Buskirk*, 5 Wall. 307; *Cole* v. *Cunningham*, 133 U. S. 107; *Lawrence* v. *Batcheleer*, 131 Mass. 504.

These cases, in addition to determining that no State can enjoin parties from obtaining their rights under the judgment of a sister State, also determine by a natural consequence that no action will lie to recover back proceeds obtained under such judgment, thus depriving the appellees of all relief, under their bill.

5. Whether or not one State court could enjoin parties from proceeding in another State court, it is clear that no United States court can do so, even before judgment. R. S. U. S., Sec. 720. The foregoing statute applies as well to injunctions against parties who are proceeding in a State court as it does to an injunction against the court itself. *Dial* v. *Reynolds*, 96 U. S. 340; *Whitney* v. *Wilder*, 54 Fed. Rep. 554. This statute applies by reason of its general terms to the Supreme Court of this District. *United States* v. *Mills*, 11

App. D. C. 504. The object of this act was to prevent unseemly conflict between courts of different jurisdictions which certainly makes it strongly applicable to the present instance.

6. Appellant's judgments were rendered from one to two years before the bill in this case was filed. Such unexplained delay in what now amounts to an attempt to obtain the benefit of appellants' expenditures and hard fought struggles, constitutes unwarranted neglect and *laches* which would be fatal, even were the court dealing with domestic judgments. *Morris* v. *Edwards*, 62 Tex. 206; *Bateman* v. *Willoe*, 1 Sch. & Lefr. 204; *Barber* v. *Elkins*, 1 Johns. Ch. 465; *Stilwell* v. *Carpenter*, 59 N. Y. 414; 1 High on Injunctions (3d Ed.), Sec. 112.

7. Appellees can not support their bill upon the principle of estoppel. Their allegations of fact to constitute the same are too vague and indefinite. But even if this were not so there is no estoppel. If the appellants have by their action prevented themselves disputing the deed of assignment, this estoppel obviously does not operate to prevent them from taking steps to obtain that which the deed of assignment does not purport to convey, or what it could not convey by reason of the prior fraudulent deeds, viz., the fee simple. But, again, no act of the appellants can operate to prevent this court from giving constitutional effect (1) to the statutes of Maryland, (2) to the Maryland judgments; nor from giving effect to R. S. U. S., Sec. 720, nor to *laches* of the appellees. Even if estopped as to property in the District of Columbia, this is not so as to land in Maryland. *Moore* v. *Church*, 70 Iowa, 208.

*Mr. O. B. Hallam* for the appellees:

1. The second ground of the demurrer is founded on the hypothesis that the Maryland land did not pass by the assignment, at least not in such way as would enable the appellees to reach it. To ascertain the exact status of this

land it becomes necessary to give its history as stated in the bill.    Scott owned it in fee simple in October 17, 1888, and conveyed it to Coughlan, who immediately conveyed it back to Scott, his heirs and assigns, to the use of the said Scott, his heirs and assigns, upon certain trusts.    These two deeds left the title to the property just where it was before they were made.    A deed with such remarkable powers to use, mortgage, sell or devise, without responsibility to anybody, gave Scott a fee simple title as much as though no pretended trust had been added.    A deed with similar qualifications was recently held by the highest court of Virginia, in *Walke v. Moore*, 30 S. E. Rep. 374, to convey a fee simple title.

But it is immaterial whether this be so or not.    All property which Scott had passed by his deed of assignment, and these powers and this control and right to convey it amounted, by their peculiar phraseology, to a property beyond a life estate.    It is immaterial from another point of view also; conceding appellants' contention, that deeds were not void but only voidable, it by no means follows that none but a judgment creditor could attack it.    There is no reason in the present instance why the assignee, or, in the event of his failure, a successor or a creditor in his stead, could attack these conveyances; Scott was under no inhibition from moving against them; on the contrary, living or dying, he could wipe them out with one stroke of the pen. Moreover the tendency of modern decisions has been to to considerably modify that ancient rule, at least whenever the State has undertaken by statute to regulate the making of assignments and their effect; and this without one word in the statute expressly conferring power to sue to set aside fraudulent conveyances.    *Pillsbury* v. *Kinyon*, 33 N. J. Eq. 287, and cases cited.

This opinion is approved in *Grant* v. *Crowell*, 9 Atl. Rep. 201; and in *Kalmus* v. *Ballin*, 28 Atl. Rep. 791, another New Jersey case, carrying out the same doctrine still further, it is held that the assignee having the power, he owes a duty

to certain creditors to make such attack, and on failure to perform such duty, a creditor to whom it is due may file a bill in his own name to avoid such transfer.    See, also, *Hanes* v. *Tiffany*, 25 Ohio St. 552; *Blandy* v. *Benedict*, 42 Ohio St. 299; *Chapin* v. *Jenkins*, 50 Kan. 385.

In the following cases from Texas it is held that creditors may bring suit to subject property fraudulently conveyed by the debtor to the payment of their debts without first having acquired a lien thereon.    *Cassady* v. *Anderson*, 53 Texas, 527; *Shirley* v. *Railway Co.*, 78 Id. 131; *Dittman* v. *Weiss*, 23 S. W. Rep. 863.

The assignee for benefit of creditors may recover property fraudulently conveyed, as he may reach funds in the hands of a fraudulent holder.    *Cooper* v. *Perdue*, 16 N. E. Rep. 141. See, also, *Chaffee* v. *Scheen*, 34 La. Ann. 686.

The assignee, Browning, had the right to attack these conveyances if it was at all necessary, and it follows that any creditor might do the same on his failure.    Hence the appellees have the right by proper proceedings to get at the fee simple, if it is hidden, unless their right to do so is obstructed or destroyed from some other cause.

2. Did the assignment pass the title?    This involves two questions; whether it was executed so as to pass title under the District law; and, if yea, whether the Maryland statute requiring a bond prevents its going into effect as between the parties to this bill.    That the first of these questions must be answered in the affirmative admits of no reasonable doubt.    The language of the Act of February 24, 1893, is "Such inventory shall not be conclusive as to the amount of the debtor's estate, but such assignment shall vest in the assignee  .   .   .   the title to any other property  .   .   . belonging to the debtor  .   .   .   at the time of making the assignment and comprehended within the general terms of the same." Another section forbids preferences and provides for the payment of all debts *pro rata*.    The declared pur-

pose of the act is thus to forbid partial assignments and to secure an equal distribution of the whole estate.

The validity of such declaratory acts has been repeatedly recognized, and the deeds given full effect to convey omitted or misdescribed property. *Falk* v. *Liebus* (Colo.), 42 Pac. Rep. 46; *Smith* v. *Goodman* (Ill.), 36 N. E. Rep. 621; *Walton* v. *Eby* (Kans.), 36 Pac. Rep. 332; *Farwell* v. *Gundry*, 52 Wis. 268; *Bank* v. *Horn*, 10 How. 157; *Geilinger* v. *Phillippi*, 133 U. S. 246. Of the same general tenor also are *Brashear* v. *West*, 7 Pet. 614, and Burrill on Assignments, Sec. 99.

Were there no Maryland statute relating to assignments, it is clear that the deed passed all of Scott's property to the assignee. But it is contended that although the deed was in proper form, and although the creditors knew of its execution, and although it was duly recorded before all but two of the attachments had been levied, yet it was not good against any creditor who saw fit to disregard it, because Article 16, Sec. 205, of the Maryland Code declares that no title shall pass to the trustee until a certain bond is filed— which Browning never caused to be done; and a number of Maryland decisions are cited, upholding this provision. It will be noticed, however, that none of these are cases in which an assignment executed out of the State, at the debtor's domicile, has been sought to be avoided by a creditor also of the same domicile. The validity of an assignment is to be governed by the law of the domicile, at least as to creditors residing there, regardless of the *situs* of the property. *Schroder* v. *Tompkins*, 58 Fed. Rep. 672; *Woodward* v. *Brooks*, 3 L. R. A. 702; *Smith's App.* 117 Pa. St. 30; *Bacon* v. *Horne*, 123 Id. 452. The only exception is in favor of a domestic creditor having no actual or constructive notice of the assign- ment. *Receiver* v. *Bank*, 34 N. J. Eq. 454; *Bentley* v. *Whittemore*, 19 Id. 462; *Bagby* v. *Railroad Co.*, 86 Pa. St. 291; *Juilliard* v. *May*, 130 Ill. 87; *Long* v. *Girdwood*, 150 Pa. St. 413; *Palmer* v. *Mason*, 42 Mich. 146.

14 Ct. App.—8

It will also be observed that the Maryland statute only says that no title shall pass to the trustee until the bond is executed, and that, under the ruling of the Supreme Court in *Geilinger* v. *Phillippi*, it is not necessary, to protect the property against seizure, that the title shall pass, but only the possession and disposition; that the property can not be taken by the creditor, where the right to control and administer has passed to the assignee by a trust created, although the title remains in the assignor. This decision is in harmony with the rulings of many States. *Mark's Appeal*, 85 Pa. St. 231; *Weinman's Estate*, 164 Id. 435; *Frank* v. *Heiner* (N. C.), 23 S. E. Rep. 42; *Sabin* v. *Leibenbaum* (Ore.), 38 Pac. Rep. 434; *Watkins* v. *Wilhoit* (Cal.), 38 Pac. Rep. 53; *Bank* v. *Keefer*, 23 S.W. 675; *Fuller* v. *Hasbrouck*, 46 Mich. 78.

3. Appellants are estopped to deny trust title. The bill alleges that, independent of estoppel by reason of domicil, there was active acceptance of the assignment by all the appellees, and they are thereby estopped to deny the sufficiency of the conveyance as to any of the property. Browning was a party to the deed, signed it and accepted the trust. Surely he can not be heard to say that it became ineffectual, and that he had the right to grab for his own use any of the property, because of his own failure to perform one of his duties, the giving of the bond. Neither can the firm of Browning & Middleton, of which he was a member; neither can the Central National Bank, of which he was director and vice-president, for a bank is bound by the knowledge and conduct of its officers in matters pertaining to its pecuniary claims.

This leaves only Keane and Whitford's claims to be considered, as independent of any acts of Browning; but the bill alleges as to them, as well as the firm and the bank, that they elected to accept the provisions of the deed, attended creditors' meetings called by the assignee, voted as to the disposition of the estate, and accepted dividends paid by the assignee. In *Groves* v. *Rice*, 148 N. Y. 227, a cred-

itor who had accepted a benefit under the assignment, and attempted to gain an advantage over other creditors, was held estopped to deny the validity of the assignment.

The effect of this election to take under the assignment is well illustrated by the rule affirmed in *Cole* v. *Cunningham*, 133 U. S. 167, that State insolvent laws bind both foreign and domestic cred tors, "if they make themselves parties to proceedings under these insolvent laws by accepting dividends, becoming petitioning creditors, or in some way appearing and assenting to the jurisdiction." Citing 1 Wall. 223 and 4 Wall. 409. See, also, *Kendall* v. *Coke Co.*, 182 Pa. St. 1.

It is a well-settled rule that if a creditor does any act which affirms the assignment he can not afterwards dispute the validity of any of its parts. Where a creditor, especially one named in the deed as such, does any act to affirm it, he becomes just as much a party to the deed as though he had signed his name to it, and is bound by all its provisions. It has already been demonstrated that the local statute made the deed effective as to all interest that Scott had; the estoppel then goes not only to the letter of the deed but to the construction which the law of the domicile gives it. No sound reason can be given why acceptance of a deed shall not be as binding as the recognition of a judicial proceeding.

The jurisdiction of the court of chancery to restrain persons within its territorial limits and under its jurisdiction from doing anything abroad, whether the thing forbidden be a conveyance or other act *in pais*, or the institution or prosecution of an action in a foreign court, is well settled. It may grant an injunction to prevent an evasion of the insolvency laws of the state. The exercise of this jurisdiction is not forbidden by the provisions of the Constitution that full faith and credit shall be given judicial proceedings of other states. Beach's Mod. Eq. Jur., Sec. 649. *Dehon* v. *Foster*, 4 Allen, 545: 7 Allen, 57; *Vail* v. *Knapp*, 49 Barb. 299.

In *Cole* v. *Cunningham,* 133 U. S. 107, and *Phelps* v. *Mc-Donald,* 99 U. S. 298, the general principle above stated is approved, and it is not denied by appellant's counsel here, but they urge that it only applies to pending proceedings and not to the enjoining of the execution of a foreign judgment rendered in an attachment proceeding, and the full faith and credit clause of the Constitution is invoked. It may be remarked that that clause is by its terms only compulsory on the States, and as the District of Columbia has been held not to be a State within the meaning of the clause authorizing citizens of another State to sue in the United States Circuit Courts, it may well be doubted whether the full faith and credit clause is applicable to the courts of this District. But waiving that, it only means that they shall give the same faith and credit they would give if the judgment had been rendered in one of their own forums. It could not have been the intention of the framers and adopters of that venerable charter to require a State to give higher credit to a foreign than to a domestic judgment. That the court of chancery has power to stay proceedings on any judgment at law was settled long ago. 3 Black. Comm. 437.

It is contrary to a natural sense of justice to hold that any person is bound by a judgment to which he is not a party. That foreign judgments *in rem* are not conclusive on non-parties is the settled rule both in this country and England. *Imri* v. *Castrique,* 8 C. B. (N. S.), 405; *Simpson* v. *Fogo,* 1 H. & M. (Eng. Ch.), 195; *Covey* v. *Cutler,* 56 N. W. Rep. 255; *Hockaday* v. *Drye,* 54 Pac. Rep. 475.

Appellants rely strongly on *Green* v. *Van Buskirk,* 7 Wall. 139, as conclusive that a foreign judgment condemning attached property can not be attacked; but the distinctions between that case and the present one are obvious. That was an action at law for the conversion, not a bill in equity to prevent the conversion. That was an action by a mortgagee, and not by creditors claiming equally with the suing creditors, under a trust for their joint benefit. The decision

in that case was also based on want of notice of the mortgage to the creditor attaching, and actual notice of the attachment proceeding given to the mortgagee, and his failure to appear and contest. Here it is admitted that appellants knew of and accepted the trust deed before they levied the attachment, and it is not pretended that the appellees had any notice of the attachment proceedings until after judgment. An examination of the case shows that the Supreme Court did not refuse to review the Illinois decision, but did so and came to the conclusion that it was right under the Illinois law, and that that law governed because of the peculiar facts in that particular case, mainly want of actual or constructive notice of the mortgage. See, also, *Towne* v. *Campbell*, 35 Minn. 233; *Bailey* v. *Rider*, 10 N. Y. 365.

4. The courts of this District can enjoin. It is argued that no matter what may be the equities, or the power of courts of the domicil over foreign judicial proceedings, yet because of Sec. 720, U. S. Rev. Stat., which forbids "any court of the United States to stay proceedings in any court of any State, except in bankruptcy proceedings," no injunction can be granted. This section was enacted in 1873, and was a revision of an early statute. It was evidently passed to prevent unseemly conflicts between the State and the Federal courts located within the same territory. It has already been quite liberally construed beyond its letter. Thus it has been held that it does not apply where the United States courts have taken jurisdiction first, nor forbid an injunction against the institution of suits. See *Fisk* v. *Railway Co.*, 54 Fed. Rep. 547. At all events, the Supreme Court of the District is not, in a proceeding like this, acting as a court of the United States within the meaning of that section. The functions of this court are dual. In matters of civil controversies, especially between its own citizens, it has the functions of a State court. If appellants' contention be correct, we have the anomalous condition of affairs that all States have the right to enjoin each others' courts, while the District

of Columbia, a sovereignty for such purposes, is powerless to prevent its own citizens from robbing each other by wrongful and oppressive litigation, if they only step outside of the District line to do so.

Whatever may have been the law in 1873, a local statute since passed has unquestionably conferred the power of injunction. See Act of February 27, 1877, (19 Stat. 240), amending Sec. 763, R. S. D. C., by prefixing these words: "Said court shall have cognizance of all cases in law and equity between parties both or either of which shall be resident or be found within said District." The granting of "cognizance" of all cases in equity necessarily conferred the power to issue the writ of injunction to stay proceedings in a State court, where it would be proper in any similar case as between different sovereignties.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The first contention of the appellants, is, that the demurrer should have been sustained because the courts of the District of Columbia, being courts of the United States, have no jurisdiction, under any conditions whatsoever, to enjoin a party from proceeding in the courts of a State.

This is founded on the prohibition contained in section 720, R. S. U. S. which reads thus: "The writ of injunction shall not be granted in any court of the United States to stay proceedings in any court of any State, except in bankruptcy proceedings."

This statute, enacted originally in 1793, was intended to prevent unseemly conflicts that might occur between the courts of the several States and the Federal courts exercising jurisdiction within their limits, and has always received liberal interpretation to that end. *Diggs* v. *Wolcott*, 4 Cranch. 179; *Peck* v. *Jenness*, 7 How. 612, 625; *Watson* v. *Jones*, 13 Wall. 679, 719; *Haines* v. *Carpenter*, 91 U. S. 254, 257; *Dial* v. *Reynolds*, 96 U. S. 348, 350; *In re Sawyer*, 124 U. S. 200, 220. See, also, *Dillon* v. *K. C. etc., Rwy. Co.*, 43 Fed. Rep. 109.

As the courts of the District of Columbia are necessarily courts of the United States, they are included within the broad letter of the statute. *United States* v. *Mills,* 11 App. D. C. 500, 505.

In another sense also, the statute may be regarded as declaratory of an established principle of comity between courts, through the operation of which, when the jurisdiction of one court and the right of a party to prosecute his suit have attached, another court will not undertake to arrest the proceedings. *Peck* v. *Jenness,* 7 How. 624.

It must, however, be borne in mind, in considering the effect and operation, within the limits of the District of Columbia, of the general statutes relating to the courts of the United States, and some other subjects, that the courts of general jurisdiction of the District have, since the cession of its territory by the State of Maryland, been necessarily invested with the jurisdiction over persons and property therein that was formerly exercised by the courts of that State, and that is now in general exercised by the courts of the several States within their respective limits, in addition to such as were formerly exercised by the courts of the United States for the State of Maryland.

For the reason that the general laws of the United States did not, and could not provide for all the conditions existing at the time of the cession, and to prevent confusion, it was at once enacted that the laws of Maryland, not necessarily inconsistent with the change of sovereignty, should continue in force until modified or repealed by Congress; and notwithstanding the lapse of nearly one hundred years they now constitute the greater and more important part of our written law.

One effect of the peculiar conditions in respect of the jurisdiction over persons and property created by the cession of the District, was to raise doubts whether general Acts of Congress, adapted to the conditions of the authority of the United States throughout the States and Territories of the

Union generally, should be regarded as changing the laws of the District without the express declaration, or the necessary implication, of such a purpose; for it would sometimes happen that such a law, demanded by and enacted for conditions existing elsewhere, would tend to create confusion and embarrassment in the District because inconsistent with the great body of its law.

This, doubtless, led to the enactment now found in section 93, R. S. D. C., as follows: "The Constitution and all the laws of the United States, which are not locally inapplicable, shall have the same force and effect within the District as elsewhere within the United States." And this test we have had occasion several times to apply in determining whether a general law, in any or all of its provisions, was intended to have operation in the District of Columbia. *Knight* v. *United States*, 6 App. D. C. 1, 5; *Chase* v. *United States*, 7 App. D. C. 149, 156; *United States* v. *Mills*, 11 App. D. C. 500, 504, 506.

The original act now embodied in section 720, R. S. U. S., was enacted before the cession, and it may be that it is not locally applicable for the reason that the apprehended conflicts of jurisdiction sought to be prevented thereby can not occur in the District because its courts are undivided and represent but one authority. Courts of the United States, elsewhere, sit within the States, and their process runs to the limits of their designated districts, which are sometimes co-extensive with the limits of the State. Within those limits the party seeking redress may have it as well in the courts of one as of the other; and there is every reason why upon general principles, he should be compelled to litigate in the State tribunal when it has already acquired jurisdiction of the subject matter and of some at least of the parties. Moreover, the jurisdictional requirements of the United States courts in a State in respect of diverse citizenship, would render it next to impossible for them to exercise a restraining power over the citizens of the States of their location in

the matter of litigation in foreign States like that common in the State tribunals. It may be, therefore, that the section aforesaid ought not to be construed as operating to exclude the jurisdiction of the courts of the District in such cases, as the successors of the tribunals of the State of Maryland, or, in other words, as taking away a jurisdiction which, if the District were still a part of the State of Maryland, would undoubtedly exist in the courts of that State. *Dehon* v. *Foster*, 4 Allen, 545; *Cole* v. *Cunningham*, 133 U. S. 107.

This question is one of importance and difficulty; and as the case can be fully and finally disposed of without its determination, we prefer to pass it until such time as it may come before us, of necessity, and receive re-examination and more careful consideration.

2. Passing the question, then, of the effect of the statute aforesaid upon the complainants' right to the relief prayed for, we come to the second ground of the contention in support of the demurrer, which, for convenience of consideration, will be separated into the several propositions that it involves.

(1) It is entirely outside of the case to consider the operations of the provisions of the Assignment Act of Congress of February 24, 1893, in working a conveyance of the title of all property owned by the assignor Scott, whether recited inaccurately in the schedules attached to the deed of assignment, or omitted altogether therefrom.

The only property within the comprehension of this case is the land situated in Montgomery County, Maryland; and the act in force in the District of Columbia can not affect the transmission of its title. The operation of the deed of assignment as a conveyance of its title must depend solely upon the laws of Maryland; for it is an unquestionable principle of law, here and everywhere, that the title and disposition of real property are exclusively subject to the laws of the State wherein it lies, which can alone prescribe the mode whereby the title can be passed from one person

to another. *McCormick* v. *Sullivant,* 10 Wheat. 192, 202; *United States* v. *Fox,* 94 U. S. 315, 320; *Robertson* v. *Pickrell,* 109 U. S. 608, 611; *Schley* v. *Pullman Car Co.,* 120 U. S. 575, 580; *Langdon* v. *Sherwood,* 124 U. S. 74, 81; *Arndt* v. *Griggs,* 134 U. S. 316, 321.

And, necessarily, the same rule that governs in the case of the transmission of title by deed or will applies also in the case of an assignment for the benefit of creditors. *Loving* v. *Pairo,* 10 Iowa, 282, 287; *Gardner* v. *Commercial Bank,* 95 Ill. 298, 304; *Jenks* v. *Ludden,* 34 Minn. 482, 486; *Thompkins* v. *Adams,* 41 Kan. 38, 48.

Cases cited on behalf of the appellees, and others likewise, go no further than to hold that, where an assignment for the benefit of creditors has been made in one State, it will pass the title to personal, and sometimes to real property, in another, when the deed of assignment, in its form and execution, is in substantial compliance with the laws of the latter State regulating conveyances of the title to such property, and conflicts only in some of its administrative features with the local law regulating the administration of such trusts for the benefit of creditors, when the question arises between the citizens of the State where the assignment was executed, and when the latter does not expressly contravene the laws and established public policy of the State where the property is situated. *Juillard* v. *May,* 130 Ill. 87, 96. See, also, *Green* v. *Van Buskirk,* 5 Wall. 307, 311, 312; *Hervey* v. *R. I. Locomotive Works,* 93 U. S. 664, 671; *Cole* v. *Cunningham,* 133 U. S. 107, 128.

(2) Tested by the law of Maryland, the assignment, even if it be conceded that the assignor Scott had a greater than a life estate in the land, would pass nothing more than the latter as described in the schedule. Under the law prevailing in that State, the general words of the assignment are restricted by the particular description of the schedule which is made a part of it. *Mims* v. *Armstrong,* 31 Md. 87, 94.

Again, Scott having a life estate in the land coupled with a power of alienation of the fee by deed or will, his conveyance of the life estate, without reference to the power, passed that estate, and nothing more. *Ridgely* v. *Cross*, 83 Md. 161. And that case is but the declaration of the rule of construction that generally prevails. 2 Perry on Trusts, Sec. 511*c*; 4 Kent Comm. (12th Ed.), 334, 335.

Under the foregoing decisions declaring the law of Maryland, all that could be treated as conveyed by the deed of assignment is the life estate of Scott as recited in the schedule. But it further appears, by operation of the law of Maryland, that no title, of any nature whatsoever, passed to the assignee, because of his failure to enter into the bond required by the statute of the State in all cases of assignments for the benefit of creditors. Sec. 205, Art. 16 of the Code of Maryland provides that every trustee to whom property shall have been conveyed for the benefit of creditors shall enter into and file a bond in the proper court, and declares that "no title shall pass to any trustee as aforesaid until such bond shall be filed and approved as aforesaid, and no sale made by any trustee without such bond shall be valid or pass any title to such property."

Under the construction given this statute, no title whatever passes either to personal or real property until the bond has been given; and a lien acquired by attaching creditors after the date of the assignment is not affected by the subsequent execution and approval of the bond. *Stieffel* v. *Barton*, 73 Md. 408, 410; *Fidelity & Dep. Co.* v. *Haines*, 78 Md. 454, 457; *White* v. *Bank*, 80 Md. 1, 5.

(3) Even were the law of Maryland otherwise, and it were conceded also than an injunction would clearly lie to prevent a creditor within this jurisdiction from prosecuting an attachment suit against the property of the assignor in Maryland, the bill therefor comes too late after the complainants have stood by without action here, or intervention there, and permitted that suit to ripen into judgment.

That complainants were not parties to that proceeding, or that Scott may not even have been brought before the court in person, are matters of no consequence in so far as the effect of that judgment comes under consideration in this case. Inasmuch as it was a valid judgment of condemnation, subjecting the attached property to the payment of the demand found to exist for that purpose, pronounced by a court of unquestioned jurisdiction in the premises, it would have the same effect if pleaded in defense of an action here that it has in Maryland. *Green* v. *Van Buskirk,* 7 Wall. 139, 148: S. C., 5 Wall. 307, 312; *Cole* v. *Cunningham,* 133 U. S. 107, 133.

For stronger reasons, if possible, no court of another jurisdiction should undertake to thwart its regular execution in the interest of the party entitled thereto, by exerting coercion upon him when he may happen to be within its power.

In *Green* v. *Van Buskirk, supra,* all of the interested parties were citizens and residents of New York, where the chattel mortgage was made by Bates to Van Buskirk. Green attached the personal property, so conveyed, in the courts of Illinois, where it was then situated; procured its condemnation and sale, and appropriated the proceeds. Van Buskirk sued him in New York to recover the value of the converted property. Van Buskirk was not a party to the attachment suit, nor was Bates by personal service. It was held, nevertheless, that the judgment so obtained, having that effect in Illinois, was a bar to the action.

In the later case of *Cole* v. *Cunningham, supra,* wherein an injunction, issued by a State court of Massachusetts to restrain a citizen of that State from the prosecution of an attachment suit in the State of New York, was upheld, it was said, after quoting with approval from *Green* v. *Van Buskirk,* that:

"It will be perceived that it was manifestly inadmissible to hold that after Van Buskirk had permitted Green to go

to judgment in a proceeding *in rem*, which appropriated the
property as belonging to Bates, he could then get judgment
against Green for the conversion of what had been so ad-
judged to him, an adjudication which Van Buskirk had
voluntarily declined to litigate in the proper forum, and
had not sought in his own State to prevent. It was a con-
test between two individuals claiming the same property,
and that property capable of an actual *situs*, and actually
situated in Illinois. The attachment was not only levied in
accordance with the laws of Illinois, but the laws of that
State affirmatively invalidated the instrument under which
Van Buskirk claimed. Clearly, then, the law of the domicile
of Van Buskirk, Green and Bates could not overcome such
registry and other positive laws of Illinois as were distinctly
coercive."

The proceeding in this case is substantially a suit in equity
to recover and subject the proceeds of land situated in Mary-
land, that has been condemned and sold under a judgment
of a court of that State, to a demand acquired under an instru-
ment which, by the law of Maryland, had no force or effect
as a conveyance of title; and, therefore, comes directly within
the rule enounced in *Green* v. *Van Buskirk,* and approved in
*Cole* v. *Cunningham.*

The proper place for the complainants to maintain their
claim was in the courts of Maryland, which had jurisdiction
of the subject matter, and whose laws exclusively governed
its disposition.

They, however, not only kept out of the litigation in Mary-
land of which they had knowledge in time to join before
the judgment of condemnation was rendered, but also stood
by and permitted the defendant Keane to undertake the
labor and expense of the subsequent litigation with Scott,
and his daughters, who claimed the remainder upon the
termination of his life estate, that resulted in annulling the
conveyance, under which they claimed, as in fraud of cred-
itors, and without which result the condemnation judgment

would have been of little or no value. See *Scott* v. *Keane*, Maryland Court of Appeals, April Term, 1898.

3. It is independently contended by the appellees, in support of the decree overruling the demurrer, that an injunction properly lies to prevent the appellants from appropriating the proceeds of the condemnation judgment in Maryland, and to compel them to bring the same into the proper court of this District for distribution among all the creditors of Scott, on the ground that, by reason of their former acceptance of the assignment, they are estopped to deny its sufficiency as a conveyance of the Maryland land.

It would be sufficient to say that this contention is fully met by what has heretofore been said in respect of the exclusive jurisdiction of the Maryland courts in the premises; for it is an attempt to accomplish indirectly that which can not be done directly by the courts of this District, namely, to give effect to an instrument, as a conveyance of title in Maryland, that is in contravention of the laws of that State, as well also to prevent the execution of a judgment regularly obtained in that State. A proceeding that would work that result in any manner is beyond the jurisdiction of our courts. The courts of Maryland are open to the maintenance of the same right, and to them the parties must resort for relief.

The case of *Kendall* v. *Coke Co.*, 182 Pa. St. 1, that is relied on by the appellees, is not applicable to all the phases of the question as here presented. It is true that the assignment made in Pennsylvania by a resident debtor was conceded to be insufficient in its terms to pass the complete title to land in Florida under the laws of the latter State. A resident creditor, having accepted benefits under the assignment, was declared estopped to claim against it elsewhere, and an injunction was granted restraining him from prosecuting an attachment suit that he had commenced in Florida. The important distinction between that case and this is, that the attachment proceedings in Florida had not progressed to judgment of condemnation.

In *Groves* v. *Rice*, 148 N. Y. 227, the parties were all citizens of New York, the property was situated therein, and the familiar principle of estoppel by reason of the acceptance of benefits under the trust was applied, and nothing more.

With great respect for the justly distinguished court that decided the case of *Kendall* v. *The Coke Co., supra,* it seems to us that both the effect of the assignment as a conveyance of the title to the land by virtue of its terms and the manner of its execution, and the question of the party's conduct in giving it effect by way of estoppel, ought to have been submitted for determination by the courts of the State where the land was situated, as was the case in *Moore* v. *Church,* 70 Iowa, 208. In that case the assignment made in New York, by a citizen thereof, was in accordance with the law of that State. As a part of the assignment, the assignor made a separate conveyance of the land which was executed in conformity with the law of Iowa, where the land was situated. A creditor in New York became a surety upon the bond of the assignee, and subsequently brought a suit against the assignor in Iowa, and sued out an attachment that was levied upon the said land. He also filed his claim for the debt with the assignee in New York, and asked for his distributive share of the estate upon whatever part thereof might remain unsatisfied after crediting the sum that might be realized through his proceeding in Iowa.

The assignment, in so far as it was sought to give it operation in Iowa, was declared void because in contravention of a statute of that State which forbade preferences in an assigment for the benefit of creditors. It was also held that the attaching creditor was not estopped to have the assignment and the conveyance executed in order to give it effect, annulled, by reason of his having become surety for the assignee in New York, or having preferred his claim there against the assigned estate. His conduct, it was said, could go no farther than to estop him to deny the validity of the

assignment in New York in respect of the property situated there.

Now it may be, that, in the distribution of the proceeds of the property in the District, the defendants would each be denied participation unless they should first account for the proceeds of the Maryland litigation; or, that they would, at least, be limited therein to their proper proportion after crediting them with the amounts so realized. But these are questions that can only arise on the distribution of the estate when made, and we are not to be understood as expressing any opinion in respect to their determination.

4. In addition to the matters that have been discussed, the bill alleges acts of misconduct on the part of the assignee and prays his removal and the appointment of another. There are also prayers for discovery and for an account by the assignee of property that may have come into his possession in that right. The assignor Scott is also called upon for discovery in respect of any property that he may have that is not described in his schedules. These questions are not before us on this appeal, and it may be that the complainants would be entitled to maintain their bill, with or without amendment, for relief therein and perhaps in other particulars.

The decree will therefore be reversed with costs, and the cause remanded, with direction to sustain the demurrer, dissolve the injunction and dismiss the bill as to the appellants, Thomas T. Keane, Alpheus Middleton, The Central National Bank of Washington, Edward O. Whitford and the partnership of Browning & Middleton; and for further proceedings not inconsistent with this opinion. It is so ordered.

*Reversed.*