### THE MECHANICS B. & L. ASSN. v. FOWLER.

1. FRAUD—CREDITORS.—DEEDS of husband to wife and daughter, held to be fraudulent and void as to creditors.
2. IBID.—IBID.—JUDGMENTS confessed by father to son and brother, *bona fide* creditors, to be used and actually used by them by filing when other creditors filed judgments obtained by suit, are not frauds on creditors.
3. JURISDICTION—REAL PROPERTY.—Courts of this State, parties to the case, being citizens thereof, have jurisdiction to set aside a deed for lands in a foreign State.

Before TOWNSEND, J., Spartanburg, December, 1898. Modified.

Foreclosure by The Mechanics Building and Loan Association against W. D. Fowler, his wife and daughter, and judgment creditors. The master states the facts as follows:

"On November 21, 1896, W. D. Fowler signed a deed which purported to convey to his wife, N. H. Fowler, the home place whereon they had been living in the city of Spartanburg, the brick yard place also in the city of Spartanburg, and also the farm or plantation near Cross Anchor, known as the 'Davis Home' place, or 'Cross Anchor place.' The consideration expressed in the deed being $11,000. At this time W. D. Fowler was heavily in debt, and was being pressed by his creditors; some of whom were suing, and it was expected that their cases would be reached and brought to trial at the then approaching term of Court, which at that time convened the latter part of November. One of these cases was called for trial and the case continued, under an order of Court based upon an affidavit of Mr. Fowler, allowing an amendment to his answer, which amendment plaintiff was not prepared to meet. This deed was not at that time delivered to Mrs. Fowler, and indeed an actual delivery seems never to have been made to her, but the deed remained in the possession and control of W. D. Fowler until March,

1897, when just before Court it was put on record, Mrs. Fowler never having seen the deed until it was shown to her during the progress of the reference before me. The alleged consideration of the deed is made up in this way: $350 in gold handed to Mr. Fowler in 1871, or about that time, by Mr. Davis, father of Mrs. Fowler. This seems to have been originally intended as a gift to Mrs. Fowler. Next, $1,111, received a year or two later from a policy of insurance on the life of Mrs. Fowler's mother. About 1882 or 1883, the estate of Mr. Davis, father of Mrs. Fowler, was settled up and the lands partitioned, and she became entitled to about $2,600, which went into the purchase of the Cross Anchor place or Davis homestead by Mr. Fowler, who, at the sale of the real estate, in the proceedings mentioned, purchased the said property, and with Mrs. Fowler's knowledge and consent, used her interest in the estate in paying his bids at the sale. To make up the $11,000 which is the consideration expressed in the deed from Fowler to his wife, Mr. Fowler calculated a certain rate of interest on the sums above mentioned, but was unable to tell at the reference what this rate was. He also allowed premium on the $350 in gold, the amount of which he was also unable to tell. It seems from the testimony that there was no memorandum or agreement of any kind or nature by which it was understood that Mrs. Fowler was to be repaid any of these sums. On the contrary, the evidence is that Mrs. Fowler permitted Mr. Fowler to use and invest these monies as he did his own, never expecting to call him to an account therefor. It also appears that Mr. Fowler did use and invest this money as his own, and that he made no entry or memoranda whatever of this alleged indebtedness. It further appears from the evidence that for quite a number of years after Mr. Fowler received this money he was prosperous and made considerable sums of money, during which time no offer was made by him to repay any part of these sums to his wife, nor did she during all these years ever ask him to secure or pay to her any part of these sums. It was not until Mr. Fowler be-

came engaged in business as a merchant in the city of Spartanburg with Mr. Scaife a few years back, that Mrs. Fowler claims to have first mentioned his alleged indebtedness to her, and even then she does not claim to have pressed it. Thus matters went along until the fall of 1896, when Mr. Fowler, being pressed by his creditors and not having money to meet their demands, without consulting his wife, and without her knowledge, employed attorneys, had this deed drawn, signed the same, and retained possession of it until the spring of 1897, when just on the eve of the approaching Court, he had the same placed upon record. At the time this deed was signed, Mr. Fowler had only some three or four thousand dollars worth of property that was not incumbered with mortgages, a part of which he has since undertaken to convey to his wife, his indebtedness, not including the amount claimed to be due his wife, amounted to more than that. The evidence also shows that on March the 28th, 1897, Mr. Fowler undertook to convey to his wife one other tract of land containing 109 acres near the city of Spartanburg, the consideration expressed in the deed being $1,300, although Mr. Fowler says that the place is worth $2,500. He states that as there was a mortgage over this place of between twelve and fifteen hundred dollars, he placed the consideration at $1,300, as Mrs. Fowler's title would be subject to that mortgage. It seems that $1,000 of this 1,300 came from the proceeds of sale of a tract of land belonging to Mrs. Fowler in Laurens county, although a part of this was advanced after the deed was drawn up. The other 300 Mr. Fowler claimed was for money he had received and been receiving for some years from the rent of this Laurens land. It also appears that the mortgage, which was on this place near Spartanburg, has since the execution of this deed to Mrs. Fowler been reduced to somewhere between five and six hundred dollars. When asked where the money came from that made these payments, Mr. Fowler testifies that it was from monies he had received from the rent of the Laurens property. Mr. and Mrs. Fow-

ler both testify that she had permitted him to collect and use these rents as his own, and that he did so without keeping any separate account, or in any way separating this money from his own, used, managed or invested it just as he did his other money, Mrs. Fowler saying that she was willing for him to use the money arising from the rents as he did his own. At the time of the dates of these deeds Mrs. Fowler had knowledge of the fact that Mr. Fowler was involved, that he was borrowing money, giving heavy mortgages on the most valuable part of this property; and had been making bad investments at which he had lost considerable sums of money. Mr. Fowler gave as his reason for making these deeds, that on account of recent losses through bad investments, he had lost confidence in his judgment and desired to guard against the future. The evidence also shows that since these deeds were signed and since they were put upon record, there has been no change whatever in the possession or in the management or control of any of the property described in said deed. I therefore find that all of the money making up the consideration of the deed of November 21, 1896, was not a present consideration; that the deed was wholly voluntary, and that said deed was never actually delivered to Mrs. Fowler, but remained in the control and possession of W. D. Fowler until he put the same upon record in March, 1897, and that there has been no change in the possession, management or control of said property since the deed was signed or recorded; and that by signing and recording this deed, Fowler was attempting to put his property beyond the reach of his creditors.

As to the second deed, I find that $1,000 of the consideration expressed therein was money loaned by Mrs. Fowler; that the balance of said consideration, as well as the monies since paid by Mr. Fowler on the mortgage, was his own money, and not the money of Mrs. Fowler; that Mrs. Fowler allowed Mr. Fowler to collect, use and invest the money arising from the rest of her Laurens land as his own, and that Mr. Fowler received the same as his money, keeping no

8—57

separate account whatever, using it in his own way and as
he did his own funds.    That all of the consideration of said
deed, over and above the $1,000, was voluntary.  In signing
this deed and placing it upon record, Mr. Fowler was also
attempting to put this property beyond the reach of his
creditors, and that since it was signed or recorded Mr. Fow-
ler has been in possession of said property, receiving the
rents, managing it and controlling it just as he did before
the said deed was executed, without any new or independent
contract having been made between himself and Mrs. Fow-
ler.   The evidence also discloses the fact that in January,
1897, shortly after he had signed the deed conveying the
most valuable part of his property to his wife, he had pre-
pared the other deed hereinbefore referred to, which for
some reason, not appearing from the evidence, was not then
signed, and at the same time he had prepared two confes-
sions of judgment, one to his son, leaving the amounts
blank, which judgment was afterwards filled out, signed by
W. D. Fowler, and entered and enrolled the first day of
April, 1897.   The evidence clearly shows that the statement
of facts in this confession is incorrect.   This is the case
especially in the second, third and fourth items.   The sec-
ond and third items state that the amounts therein named,
respectively, were for money paid at the request of W. D.
Fowler by W. E. Fowler for purchase of cross-ties, materi-
als and lumber for the partial construction of the Spartan-
burg, Clifton and Glendale Railroad Co., while the evidence
shows that this money, if loaned at all, was loaned by W. E.
Fowler to aid him in purchasing an interest in said railroad
company. According to the confession, item 4 was for $450
loaned W. D. Fowler by W. E. Fowler on February 1st,
1896; while according to the evidence this money, if loaned
at all, was all loaned at various times and in different sums
during the year 1896, none of it being loaned at the time
stated in this confession.   I am also satisfied that at the
time and before this confession was taken, W. E. Fowler
knew that his father was being pressed for money, and that

he was insolvent.   The·other confession of judgment made by. W. D. Fowler to J. W. Fowler was also prepared in January, 1897, and kept ready to be signed, entered and enrolled at a moment's notice; and while there is nothing in the evidence to satisfy me that this money was not loaned by J. W. Fowler to W. D. Fowler, I do find at the time W. D. Fowler was insolvent, and that this confession was for an antecedent debt.   A good deal of testimony was directed to ascertain the facts relative to the sale of some land in West Virginia in which W. D. Fowler had an interest.   The facts relative to it are as follows: In November, 1895, this land was sold under a tax execution, and it was bid in by W. D. Fowler for himself and in his name.   For some months after this Mr. Fowler was making effort to have this land sold for the purpose of collecting a debt of $1,500 which Fowler claimed was owing him by a corporation to which this land belonged, before the tax sale, and in which W. D. Fowler was a large stockholder.   Matters continued this way until the third day of March, 1897, when he assigned his bid to his daughter, Miss Nora Fowler, and caused a deed to be executed to her.   It is claimed by the Fowlers that the money which paid the bid at the tax sale belonged to Miss Nora, but I find from the evidence that this money belonged to W. D. Fowler and not to his daughter, the money which seemed to have gone into this purchase having been furnished by J. W. Fowler to W. D. Fowler, according to their testimony, in 1894 or 1895.   Taking all the facts and circumstances as disclosed by the evidence, I find that from a time prior to the signing and recording of the deeds and confessing the judgments hereinbefore mentioned, that W. D. Fowler was insolvent, was being pressed and pursued by his creditors, and that he knew, if these transfers to his wife were good, that there would not be enough left to pay anything like the full amount of the debts that he then owed; and that by making these transfers and confessions, he was endeavoring to put the larger portion of his property and the proceeds thereof in the hands of his immediate

family, intending thereby to prevent his just creditors from collecting their claims, and saving that much for his own benefit. His purpose in doing this was manifestly to hinder, delay and prevent his other creditors from collecting the claims upon which they were then suing or threatening suit. I also find that Mrs. N. H. Fowler and W. E. Fowler were cognizant of the affairs of W. D. Fowler; that they knew that his creditors were pressing him; that he knew that his creditors were pressing him; that he was not meeting the claims against him; that these transfers were for such large amounts that he would be deprived of the means of paying his debts, and that W. D. Fowler was disposing of his property for the purpose of placing it beyond the reach of his creditors, who were endeavoring to collect their money."

As to the confessions of judgment, the Circuit Judge says:

"I also overrule their fifty-second exception, so far as it relates to the confessions of judgment from W. D. Fowler to his son and brother; because by these confessions it is clear to me that he attempted to prefer his brother and son to other creditors, and, in this way, to place his property in the hands of his kinsmen, who were friendly to him, at the expense of other honest creditors. It is in evidence, among other things, that this son and brother have allowed Miss Nora Fowler the use of these judgments in paying for her purchase of the Glenn Springs property, in Spartanburg County, which was sold by the sheriff under the judgments against the defendant, W. D. Fowler."

As to the deeds to Fowler's wife and daughter, he says:

"I am forced to the conclusion that both the deeds from W. D. Fowler to his wife, Mrs. N. H. Fowler, were made in violation of law, and are null and void under the statute of Elizabeth. It is clear that he used at least $4,000 of money belonging to her, and that on a part of this she ordinarily would be entitled to interest. But interest cannot be calculated on it by reason of the uncertainty as to the dates

from which the different amounts making up this $4,000 were received by him, and for the stronger reason that the evidence fails to show any contract, expressed or implied, on the part of Fowler to repay these sums, or of any intention of Mrs. Fowler to exact the same of him.    She also would ordinarily be entitled to a premium on the $350, but for the reason just above given, this cannot be allowed in his case. Therefore, while the deed of November 26th, 1896, cannot be said to be wholly voluntary, except as hereinbefore explained, yet I find that there was absolutely no present consideration, and that it was made to hinder, delay and defraud other creditors of W. D. Fowler, and must, therefore, be set aside.    If W. D. Fowler or his wife had during the years of their married life, or during the period at which he received these various amounts of money, kept some account of them, it would have shown a purpose or intention to settle them at some time; but such is not the case.    It is true, that both of them testified as to some mention of the matter at times between them, but the whole matter appears very vague and indefinite, and is entirely lacking of that full, clear and satisfactory evidence of good faith on their part, which the Courts require in cases like this.    They do not attempt to fix the time and place of these conversations, or of the words used, as they might do if they had been in earnest at any of the conversations referred to—if, indeed, such conversations really took place.    Nor do they show by that full, clear and satisfactory evidence an intention on their part to settle, the one with the other, for any of these monies.    As to the Boyd tract, I am satisfied that a part of the consideration expressed in this deed, to wit: $1,000, was money loaned by Mrs. Fowler to her husband, and that the balance, $300, was money which Mr. Fowler then claimed was due his wife for rents from Mrs. Fowler's Laurens County land, which he had been renting out, collecting and using rents as he did his own, with his wife's knowledge and consent; and but for the fact that Mr. Fowler was being pressed by his creditors, some of whom were about to obtain judgment

against him, this deed in all probability would not have been
executed, and no attempt would have been made by Mr.
Fowler to pay his wife any part of the rents, which he had
been receiving and using, nor would have Mrs. Fowler
made any attempt to collect them from him.    From all the
testimony, the conclusion is inevitable that, while Mr. Fow-
ler did receive and use certain money belonging to Mrs.
Fowler in a way and manner before found, there was cer-
tainly no present consideration for either of these deeds, and
since their execution, there has been no new and independent
contract between Mr. and Mrs. Fowler, with reference to
the possession, management or control of the property de-
scribed in them, but that this possession, management and
control has continued unchanged since their execution.    I
am further satisfied that it was only after he found himself
in failing circumstances and was actually insolvent, that
W. D. Fowler originated the scheme of making these deeds
to his wife, in order to save the most valuable part of his
property, and that, at that time, Mrs. Fowler was aware of
his embarrassed condition.    I am also convinced that the
confessions of judgment to his brother and son were part of
the same scheme, and were made with like intentions and
under the same circumstances, and must share the same fate
as the deeds to Mrs. Fowler.    I am satisfied from the testi-
mony that he owed his brother and son all that they claimed
by their respective judgments, but as their judgments are
unquestionably a part of the general scheme to prefer his
family connections at the expense of other creditors, at a
time when he was consciously insolvent, and after they
knew his condition, they must be set aside as intending to
prefer them at the expense of others, and to hinder, delay
and defraud other just creditors.    The assignment of the
bid of the tax sale in West Virginia is in the same category:
it is not a large amount, $60, I believe, but the principle is
the same.    I am convinced that this, too, was a part of the
general scheme to hinder, delay and defraud creditors.    If
that assignment had not been made, creditors in search of

something to apply to their claims could have paid the bid, and secured that valuable property for their benefit. Or even after the deed had been made to Mr. Fowler, they could have levied on and sold his land and applied the proceeds to the payment of their debts. But the assignment of this bid, and having the deed made to his daughter, put it beyond their reach, unless said deed be set aside. That, too, must be cancelled and set aside."

W. D., N. H., Nora, John W., and W. E. Fowler appeal.

*Messrs. Hydrick & Wilson,* for appellants, cite: *On the main issue: Nelson* v. *Good,* 20 S. C.; *Wilks* v. *Walker,* 22 S. C.; *Austin, Nicholls & Co.* v. *Morris,* 23 S. C.; *Lamar* v. *Pool,* 26 S. C.; *Putney* v. *Freisleben,* 32 S. C.; *Mann* v. *Pool,* 40 S. C.; *Meinhard* v. *Youngblood,* 41 S. C.; *Mitchell* v. *Mitchell,* 42 S. C.; *Avery* v. *Wilson,* 47 S. C.; *Bank* v. *Dowling,* 52 S. C.

*Messrs. Duncan & Sanders* and *Carlisle & Carlisle,* for defendants, respondents, cite: *Exceptions too general:* 30 S. C., 170; 43 S. C., 99; 44 S. C., 485. *As to transactions between wife and husband:* 24 S. C., 275; 25 Am. St. R., 807. *Proofs must be clear as to bona fides of transaction:* 32 S. C., 186; 40 S. C., 1; 42 S. C., 484; 52 S. C., 365; 1 Hill., 16; McM. Eq., 27; 1 Bail., 118. *Presumption where no change of possession follows deed:* 21 S. C., 391, 270; 52 S. C., 475; Rich. Eq. Ca., 410; 2 Hill Ch., 56, 95; 3 Rich. Eq., 403, 412. *As to confessions of judgment:* 19 S. C., 190.

March 30, 1900. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action to foreclose a mortgage executed by the defendant, W. D. Fowler, in favor of the plaintiff. The judgment creditors of W. D. Fowler were made parties, and in answering the complaint certain of them allege that two deeds by W. D. Fowler to

his wife, conveying the most valuable portion of his property, a deed which he caused to be made to his daughter, Nora Fowler, and two confessions of judgment to his brother and son, were fraudulent and void, both under the statute of Elizabeth and the assignment act. The mortgage of the plaintiff is not contested. These transactions are set forth in detail in the report of the master, who sustained the allegations of fraud, in his findings of fact. His Honor, the Circuit Judge, while differing with the master in some of his findings of fact, nevertheless sustained his conclusion that the instruments of writing heretofore mentioned were fraudulent, null and void.

The appellants filed numerous exceptions, which it will not be necessary to consider in detail, as the practical question in the case is whether the deeds and confessions of judgment were fraudulent, null and void for the reasons hereinbefore stated. For the reasons stated by the Circuit Judge in his decree, this Court agrees with him that the deeds to W. D. Fowler's wife and to Nora Fowler, his daughter, are fraudulent, null and void.

We do not, however, agree with him in regard to the confessions of judgment to J. W. Fowler and W. E. Fowler. It appeared that when W. D. Fowler was being sued, he had prepared in January, 1897, two confessions of judgment, one of which was to his son, W. E. Fowler, in which the amount was left blank, but which was afterward filled out and signed by W. D. Fowler. The other, as hereinbefore stated, was to his brother, Jno. W. Fowler. Although prepared beforehand, these confessions of judgment were not to be entered so as to take priority over other judgment creditors, and in fact they were not entered until the first of April, 1897, when other judgments were entered. His Honor, the Circuit Judge, says: "I am satisfied from the testimony that he owed his brother and son all that they claimed by their respective judgments." The testimony shows that the brother and son, instead of attempting to get an undue preference, only wished to be

placed on an equal footing with the other creditors, but not to hinder, delay or defraud them. The Circuit Judge, therefore, erred in setting aside the said confessions of judgment.

The appellants contended also that the Court erred in assuming jurisdiction over land in West Virginia by directing title thereto to be cancelled. This question is settled against the appellant by *Ep. Ch.* v. *Wiley*, 2 Hill's Ch., 584, and *Cole* v. *Cunningham*, 133 U. S., 107.

The respondents' additional grounds upon which they asked that the judgment should be affirmed are disposed of by what has been said in considering the other exceptions.

It is the judgment of this Court, that the judgment of the Circuit Court be modified in the particulars herein mentioned.